UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

WICHITA DIVISION

ANGELIINA LYNN LAWSON, individually and as next friend of D.L.,

Plaintiff,

v.

ERIC W. GODDERZ, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES

TAYLOR J. WINE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES

JOHN BRYANT, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES

RHONDA K. MASON, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES

KEVEN M. O'GRADY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES

THOMAS D. DROEGE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES

JONATHAN DAVID BRENT LAWSON, INDIVIDUALLY

BREANNE HENDRICKS POE, INDIVIDUALLY

ANDREW BOLTON, INDIVIDUALLY

AMANDA MIRANDA, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES

HEATHER DUNZ, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES

ANDREA DUNSETH, INDIVIDUALLY

RANDY WILLNAUER, INDIVIDUALLY

JIM MORROW, INDIVIDUALLY

JEANNE ROBINSON, INDIVIDUALLY

MACK CURRY, INDIVIDUALLY

AMANDA MACKEY, INDIVIDUALLY

MORROW WILLNAUER CHURCH, LLC

JOLENE L. ZIRKLE, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES

KELLY E. JOHNSON, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES

STEVEN CROSSLAND, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES

STACY JEFFRESS, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES

TINA MILLER, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES

DOE DEFENDANTS 1–10

Defendants.


Case No.: _____

JURY TRIAL DEMANDED

VERIFIED CIVIL RICO COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(18 U.S.C. §§ 1961–1968; 42 U.S.C. §§ 1983, 12131–12134, 12203; State Law)

TABLE OF AUTHORITIES

CASES

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (pleadings must plausibly state a claim)

- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (claims must rise above speculation*)*

- *Boyle v. United States*, 556 U.S. 938 (2009) (RICO enterprise breadth)

- *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008) (RICO plaintiffs need not show reliance to prove mail/wire fraud)

- *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (retaliation standard)

- *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) (judicial bias violates due process)

- *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) (RICO person distinct from enterprise)

- *Forrester v. White* 484 U.S. 219 (1988) (administration acts by judge not protected by judicial immunity)

- *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) (RICO pattern continuity)

- *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) (establishes civil RICO cause of action elements)

- *Tennessee v. Lane*, 541 U.S. 509 (2004) (ADA Title II applies to court system)

- *United States v. Georgia*, 546 U.S. 151 (2006) (ADA Title II abrogates state immunity when conduct violates constitutional rights)
- Zubulake v. UBS Warburg, 229 F.R.D. 422 (S.D.N.Y. 2004) (spoliation sanctions for destruction of relevant evidence)

STATUTES AND RULES

- 18 U.S.C. § 1961-1968 (Racketeer Influenced and Corrupt Organizations Act – "RICO")
- 18 U.S.C. § 1962(c) (prohibited racketeering conduct)
- 18 U.S.C. § 1962(d) (RICO conspiracy)
- 18 U.S.C. § 1964(a)(c) (civil RICO cause of action for treble damages)
- 18 U.S.C. § 1964(d) (DOJ notification; collateral estoppel effect for government)
- 18 U.S.C. § 1341 (mail fraud)
- 18 U.S.C. § 1343 (wire fraud)
- 18 U.S.C. § 1503 (obstruction of justice)
- 18 U.S.C. § 1512(b)–(d) (witness tampering and intimidation)
- 18 U.S.C. § 1513(b), (e) (retaliation against witness/informant)
- 18 U.S.C. § 1519 (destruction or falsification of records in federal investigations)
- 18 U.S.C. § 1952 (interstate travel in aid of racketeering)
- 18 U.S.C. § 1956 *(*prohibits laundering to conceal criminal proceeds*)*
- 18 U.S.C. § 1957 (bars monetary transactions over $10,000 with criminal proceeds*)*

- 42 U.S.C. § 12132 -12134 (Americans with Disabilities Act ("ADA") Title II – public entity nondiscrimination)

- 42 U.S.C. § 12203 (ADA Title V – anti-retaliation and interference)

- 42 U.S.C. § 1983 (civil action for deprivation of civil rights)

- 28 U.S.C. § 1331 (federal question jurisdiction)

- 28 U.S.C. § 1343 (federal jurisdiction over civil rights claims)

- 28 U.S.C. § 1367 (supplemental jurisdiction)

- 28 U.S.C. § 1391(b) (venue in federal district where events occurred or defendants reside)

- 28 U.S.C. § 1442 (civil rights removal context – *for reference only*)

- Fed. R. Civ. P. 8(a) (short and plain statement of claim)

- Fed. R. Civ. P. 9(b) (fraud pleading with particularity)

- Fed. R. Civ. P. 26(c) (protective orders)

- Fed. R. Civ. P. 26(d)(1) (timing and sequence of discovery)

- Fed. R. Civ. P. 37(b) (sanctions for failure to comply with a court order regarding discovery; may include dismissal, default judgment, contempt, or adverse inferences)

- Fed. R. Civ. P. 37(e) (failure to preserve electronically stored information)

- Fed. R. Civ. P. 56(d) (relief from summary judgment to conduct early discovery)

- Fed. R. Civ. P. 60(b)(3) *(*Relief from judgment for fraud, misrepresentation, or misconduct by an opposing party*)*

- H.R. 4245 *(*1998 Act clarifying civil RICO cannot be based solely on extortion*)*

- H.R. 5535 *(*2006 Act barring foreign governments from civil RICO treble damages*)*

Regulations and State Laws

- 28 C.F.R. § 35.130 & § 35.160 (ADA Title II regulations – general prohibitions, effective communications)

- 28 C.F.R. § 35.134 & § 35.164 (ADA Title II – anti-retaliation, fundamental alteration defense)

- Kan. Stat. Ann. § 21-5409 (Kansas crime of interference with parental custody)

- Kan. Stat. Ann. § 21-5601 (Kansas crime of child endangerment)

- Kan. Stat. Ann. § 21-6107 *(*Kansas identity theft statute*)*

- Kan. Stat. Ann. § 23-3203 (Kansas best-interests-of-child standard)

- Kansas Supreme Court Rule 122 (ADA accommodations in Kansas state courts – *for reference*)

## INTRODUCTION

1. Nature of Action and Statutory Basis.

   This is a civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968; 42 U.S.C. § 1983; and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134, 12203, to remedy a years-long pattern of fraud, obstruction, retaliation, and economic exploitation directed at Plaintiff Angeliina Lawson and her minor son, D.L.

2. Plaintiff alleges that Defendants, a mix of private actors, judicial officers, attorneys, court-appointed professionals, public officials, and affiliated business entities, formed an association-in-fact enterprise to unlawfully strip her of custody, retaliate for protected ADA activity, conceal abuse, and divert financial resources, all while insulating themselves from accountability through procedural manipulation, suppression of evidence, and coordinated misconduct.

3. The entry-point predicate act began when Defendant Jonathan David Brent Lawson, while Plaintiff was incapacitated post-surgery after the birth of D.L., unilaterally registered the child's birth certificate under his undisclosed legal surname "Brent Lawson" — without Plaintiff's knowledge or consent. This deliberate mismatch between his public alias ("Jonathan Lawson") and his legal name was later exploited to:

a. Block Plaintiff's access to D.L.'s medical, educational, and financial records;

b. Mislead institutions into treating Plaintiff as unrelated to her own child;

c. Facilitate identity-based custodial interference; and

d. Conceal assets and transactions, including fraudulent PPP loans obtained using forged joint tax returns.

4. From that fraud, Defendants expanded into a coordinated enterprise, the "Family Court Enterprise" — leveraging improper judicial venue, ex parte custody removals, retaliatory sanctions, ADA accommodation denials, fabricated therapeutic narratives, and financial coercion to achieve the common purpose: to permanently sever Plaintiff's relationship with her son, shield the father from accountability, and channel funds through favored enterprise actors.

5.   Defendants' misconduct was not limited to the courtroom. It included direct quotes evidencing bias and intent, such as Judge Eric W. Godderz stating on the record: "I will never allow any case to leave my county. I am too familiar with the parties, especially that mother."

6.   It included threats and intimidation directed at a disabled minor, such as the GAL telling D.L.: "If you keep talking to your grandmother, I'll make it worse for your mom in court."

7.   Defendants' actions also caused quantifiable economic harm: Plaintiff lost a $3.72 million real estate commission on a $62 million land deal due to reputational sabotage; was deprived of over $32,000 in maintenance arrears plus interest; lost additional child support arrears and expense reimbursements; was forced to abandon her real estate career; and suffered depletion of her credit, income, and professional standing.

8.   Pattern of Racketeering Activity.

From this entry point, Defendants engaged in a pattern of racketeering activity, as defined in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989), that is both related and continuous, including:

    a)   Custodial interference (K.S.A. 21-5409);

    b)   Mail fraud and wire fraud (18 U.S.C. §§ 1341, 1343);

    c)   Bankruptcy fraud (18 U.S.C. § 152);

    d)   Money laundering (18 U.S.C. §§ 1956, 1957);

    e)   Witness intimidation (18 U.S.C. § 1512);

    f)   Obstruction of justice (18 U.S.C. §§ 1503, 1519); and

g) ADA retaliation (42 U.S.C. § 12203) as prohibited by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) and *Tennessee v. Lane*, 541 U.S. 509 (2004).

9. Enterprise Structure and Purpose.

The "Family Court Enterprise" is an association-in-fact enterprise under *Boyle v. United States*, 556 U.S. 938 (2009), composed of both public officials acting under color of law and private actors. Judicial and agency officials provided jurisdictional control, ADA obstruction, and suppression of filings; court-appointed professionals and attorneys generated false narratives, withheld evidence, and intimidated witnesses; and affiliated business entities laundered and concealed illicit proceeds. The common purposes of the enterprise were to retaliate against Plaintiff for asserting ADA rights, unlawfully strip her of custody, and exploit her financially, conduct actionable under 18 U.S.C. §§ 1962(c), (d) (*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)), affecting interstate commerce was essential to and a foreseeable result of the Enterprise's operations

[The Enterprise operated with continuity and would persist in substantially the same form even if certain predicate acts were discontinued or individual defendants removed, making racketeering its regular way of doing business.]

Summary of Scheme.

From approximately 2019 to the present, Defendants and co-conspirators have:

a. Engineered the unlawful removal of Plaintiff's custodial rights without hearing,

notice, evidence, or due process;

b. Manipulated venue and judicial assignments to ensure a biased decision-maker

retained control (*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009));

c. Suppressed and destroyed evidence of D.L.'s abuse and medical needs (*Zubulake v.*

*UBS Warburg*, 229 F.R.D. 422 (S.D.N.Y. 2004));

d. Retaliated against Plaintiff for reporting misconduct and requesting ADA

accommodations (*United States v. Georgia*, 546 U.S. 151 (2006)); and

e. Misappropriated funds intended for D.L.'s welfare to finance enterprise activities.

10. Urgency and Relief Sought.

   As a direct and proximate result of Defendants' acts, D.L. remains in an

   environment of ongoing psychological harm and physical risk; Plaintiff has lost

   her parental relationship and suffered significant economic injury. Plaintiff seeks:

   a. Treble damages under 18 U.S.C. § 1964(c);

   b. Declaratory and injunctive relief to halt ongoing racketeering and ADA

   retaliation;

   c. Restoration of parental rights through appropriate federal protective orders; and

   d. Referral under 18 U.S.C. § 1964(d) for criminal investigation, with findings

   given collateral estoppel effect in subsequent proceedings.

11. Jurisdictional Note.

   This action does not seek to overturn any state court judgment within the meaning

   of the Rooker-Feldman doctrine. Plaintiff challenges extrinsic fraud, retaliation,

   and systemic racketeering that occurred outside the normal judicial process.

   Named Defendants are RICO "persons" within the meaning of 18 U.S.C. §

1961(3), and are alleged to have violated 18 U.S.C. § 1962(c); enterprise

participants who are not named defendants aided or benefitted from racketeering

conduct and are subject to referral for criminal prosecution.

12. Congress has expressly recognized, through legislative findings in the Public

Corruption Prosecution Improvements Act (H.R. 4245, 105th Cong.) and the Civil

RICO Amendments of 2006 (H.R. 5535, 109th Cong.), that the Racketeer

Influenced and Corrupt Organizations Act applies with full force to schemes

involving public corruption, misuse of judicial office, and abuse of state court

processes. Those findings affirm that judicial and administrative acts taken

outside the core of adjudication, particularly when used to further a corrupt

enterprise, fall outside the scope of absolute judicial immunity (*Forrester v.

White*, 484 U.S. 219) and may serve as predicate acts under § 1961(1). The

allegations herein mirror the concerns identified by Congress: coordinated misuse

of judicial authority, concealment of misconduct, and exploitation of public office

for private benefit, all constituting actionable racketeering conduct.


## JURISDICTION AND VENUE


13. Subject Matter Jurisdiction – This Court has subject matter jurisdiction over this

action pursuant to 28 U.S.C. §§ 1331, 1343, and 18 U.S.C. § 1964(c) because

Plaintiff asserts claims arising under the laws of the United States, including the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Americans

with Disabilities Act ("ADA"), and 42 U.S.C. § 1983. Plaintiff's RICO claims

(Counts I and II) present a federal question under 18 U.S.C. § 1962. To the extent

Plaintiff's claims encompass related state-law issues (including Kansas statutory violations as RICO predicate acts), this Court has supplemental jurisdiction under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal claims.

Plaintiff's injury to "business or property" within the meaning of § 1964(c) is pled separately from personal or emotional injuries, ensuring standing under controlling precedent.

14. Personal Jurisdiction – Each Defendant is subject to personal jurisdiction in the District of Kansas. Defendants include Kansas residents, Kansas-licensed attorneys, licensed therapists, court-appointed professionals, public officials, and corporate entities who committed the acts alleged herein within Kansas. Additionally, under 18 U.S.C. § 1965(b), this Court may exercise nationwide service of process for RICO claims, and each Defendant has sufficient minimum contacts with the United States to satisfy due process.

15. Venue – Venue is proper in the Wichita Division of the District of Kansas pursuant to 28 U.S.C. §§ 1391(b) and 18 U.S.C. § 1965(a) because a substantial part of the events and omissions giving rise to these claims occurred in Kansas, including in Anderson County, Leavenworth County, and Johnson County, and because the enterprise operates in multiple Kansas counties. Plaintiff selects the Wichita Division to ensure neutrality and to avoid local influence from other divisions directly tied to named defendants. The ends of justice warrant adjudicating all related parties and claims in this forum.

16. Intradistrict Assignment – Although the District of Kansas is not formally subdivided into divisions by statute, Plaintiff requests assignment to the Wichita Division as the most appropriate and neutral forum. The underlying events arose in the Kansas Fourth Judicial District (Anderson County) and involve public officials from that locale; Plaintiff resides in Leavenworth County. Wichita provides a forum removed from the political and judicial relationships in the Kansas City and Topeka courthouses that are closely connected to several named defendants.

## PARTIES

PLAINTIFF

17. ANGELIINA LYNN LAWSON ("Plaintiff") is a natural person residing in Leavenworth County, Kansas, and the biological mother of minor child D.L. Plaintiff is a qualified individual with disabilities as defined by the ADA, experiencing limitations in major life activities including communication and cognitive processing. At all relevant times, Plaintiff was the primary caregiver of D.L. until custody was unlawfully removed through acts described herein. Plaintiff brings this action individually and as next friend of D.L. for purposes of injunctive relief.

[For purposes of 18 U.S.C. § 1964(c), Plaintiff's claimed damages are limited to injuries to business and property — including lost commissions, lost business opportunities, arrears, and asset devaluation — and do not rely on personal injury or emotional harm as a basis for RICO recovery.]

## DEFENDANTS

Judicial Actors – Named in Official Capacity for Injunctive/Declaratory Relief and in Individual Capacity for Acts Outside Judicial Function or in Clear Absence of Jurisdiction

18. ERIC W. GODDERZ – Judge, Anderson County District Court, Fourth Judicial District. Godderz engaged in multiple racketeering acts in furtherance of the Family Court Enterprise.

Predicate Act #1: From apx September 2020 onward, Godderz knowingly retained Plaintiff's family court case despite a lack of subject matter jurisdiction, in violation of K.S.A. 23-3301 and 23-3218, and proceeded after lawful removal to federal court May 6 2025 in violation of 28 U.S.C. § 1446(d). He suppressed filings, abuse reports from mandated reporters, ignored child pornography, denied ADA accommodations, and made biased statements on the record: *"I will never allow any case to leave my county. I am too familiar with the parties, especially that mother"*—a public declaration of bias violating due process as recognized in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

Predicate Act #2: Between July 2024 and February 2025, Godderz and his staff suppressed Plaintiff's formal ADA accommodation requests (CART captioning, remote

access, transcript access), mocked her disability needs in internal emails, and allowed

hearings to proceed without accommodations. These acts constitute ADA retaliation (42

U.S.C. § 12203) when carried out through obstruction of justice (18 U.S.C. § 1503),

witness tampering (18 U.S.C. § 1512(c)), and falsification of records (18 U.S.C. § 1519).

Post-removal, he continued to issue rulings, schedule matters, block protective motions,

deny hearings, and coordinate with clerks to suppress federal filings—further acts of

obstruction (§ 1503) and witness tampering (§ 1512).

Loss Link: These non-judicial acts, taken in furtherance of the Enterprise, caused Plaintiff

to lose court-scheduled parenting time, disrupted her business income through

unnecessary travel and retaliatory rulings, and damaged her professional reputation by

labeling her "unstable" in a biased forum. By silencing Plaintiff and preventing the

change of venue, presentation of abuse, enforcement of arrears and ADA violations,

Godderz facilitated the unlawful transfer of custody and reversal of child support

obligations in favor of the abuser, producing direct economic, familial, and reputational

harm.

19. TAYLOR J. WINE – Chief Judge, Fourth Judicial District.

Predicate Act #1: Obstruction of Justice After Federal Removal

On or about May 6, 2025, after Plaintiff filed a Notice of Removal under 28 U.S.C. §

1446(d) requiring the state court to halt proceedings, Wine, as supervising authority over

Judge Godderz, refused to act on a March 2025 Writ of Mandamus seeking judicial

reassignment. This allowed Godderz to continue issuing unlawful post-removal orders,

constituting obstruction of justice (18 U.S.C. § 1503) and interference with legal proceedings (18 U.S.C. § 1512(c)(2)).

Predicate Act #2: ADA Retaliation and Suppression of Grievances

Between September 2024 and March 2025, Plaintiff submitted multiple ADA grievances and preservation notices requesting CART captioning, remote access, and transcripts. These were acknowledged internally in emails involving Stacy Jeffress and Elyssa Ellis. Wine, with authority to intervene, allowed continued suppression of these filings and escalation of retaliation, constituting ADA retaliation (42 U.S.C. § 12203) when carried out through obstruction (§ 1503) and witness tampering (§ 1512).

Loss Link: By refusing to reassign a jurisdictionally tainted judge and by allowing suppression of ADA grievances, Wine enabled continued biased state proceedings, resulting in missed visitation, blocked hearings, loss of effective participation, and reputational harm. These acts directly diverted Plaintiff's time and resources from her real estate business and ADA advocacy, collapsing income streams and damaging her professional standing.

20. JOHN BRYANT – Judge, Leavenworth County First District Court.

Predicate Act #1: Obstruction of Justice and Deprivation of Rights

On May 8, 2025, following a Zoom hearing, and memorialized in the May 12, 2025 Order of Dismissal With Prejudice, Bryant dismissed Plaintiff's ADA retaliation and civil rights action (Case No. LV-2025-CV-000070) on jurisdiction/res judicata grounds without ruling on pending discovery motions, including motions to compel production

from the GAL and ADA coordinators. In the same action, he refused to allow Plaintiff's fact-driven ADA retaliation, due process, and custodial interference claims to proceed to a jury, in violation of K.S.A. 60-238 and the Seventh Amendment. These acts constitute obstruction of justice (18 U.S.C. §§ 1503, 1505) and deprivation of rights under color of law (18 U.S.C. § 242) by foreclosing Plaintiff's ability to obtain and present evidence to a jury.

Predicate Act #2: Extortion and Retaliation for Protected Activity

On May 30, 2025, after Plaintiff had filed her Notice of Appeal, Bryant entered judgment awarding $4,239.66 in attorney fees to Defendant's counsel—over 80% of Plaintiff's monthly income—based on claims already dismissed. This constituted extortion under color of official right (18 U.S.C. § 1951) and retaliation for exercising rights protected under 42 U.S.C. § 12203. Between March and May 2025, Bryant also ignored Plaintiff's Poverty Affidavit and ADA indigency requests, preventing waiver of appellate docketing and transcript fees, and on April 10 and April 21, 2025, he issued blanket stays on non-party subpoenas—including those to GAL Andrew Bolton and ADA coordinators—constituting obstruction (18 U.S.C. § 1503) and witness tampering (18 U.S.C. § 1512).

Loss Link: These acts eliminated Plaintiff's access to a jury trial, blocked discovery of key evidence, and imposed unlawful financial sanctions that immediately deprived her of the funds needed for supervised visitation services. Plaintiff lost over $4,200—representing more than 80% of her monthly income—and was forced to divert business revenues to cover appeal costs. The result was lost parental contact, disruption of

business operations, and suppression of ADA-protected advocacy, furthering the enterprise's custodial interference objectives.

21. RHONDA K. MASON – Judge, Johnson County Tenth District Court.

Predicate Act #1: Judicial Obstruction and Case Manipulation

Between May 9 and June 4, 2025, Mason failed to rule on fully briefed motions for over 130 days, ignored pending ADA protection motions, and allowed opposing counsel to set and notice hearings without Plaintiff's consent, creating a false procedural narrative. She then dismissed Plaintiff's case while a motion to disqualify her was pending, in violation of due process and judicial ethics. This conduct constitutes obstruction of justice (18 U.S.C. § 1503) and honest services fraud (18 U.S.C. § 1346) by depriving Plaintiff of an impartial tribunal, concealing material rulings, and obstructing the court's lawful function to adjudicate matters free from bias.

Predicate Act #2: Retaliatory Dismissal in Response to Protected Activity

On June 4, 2025, immediately after Plaintiff filed multiple ADA-based motions, federal oversight notices, and sanctions requests—including a DOJ OCR notice (Case No. 25OCR623)—Mason dismissed Plaintiff's case without ruling on the ADA motions and despite documentary evidence of opposing parties' discovery noncompliance and retaliation. This constitutes retaliation against a witness/victim (18 U.S.C. § 1513) and deprivation of rights under color of law (18 U.S.C. §§ 241, 242), punishing Plaintiff for exercising federally protected rights and obstructing enforcement of ADA protections.

Loss Link: Mason's actions froze Plaintiff's damages recovery efforts, blocked discovery necessary for related RICO litigation, and caused further loss of business income from the inability to pursue fraud claims. The dismissals eliminated court access for parenting time enforcement and cemented the deprivation of equal protection in both state and federal forums, directly impacting Plaintiff's business operations, income stream, and ADA-protected access for both her and her son.

22. KEVEN M. O'GRADY – Judge, Johnson County Tenth District Court.

Predicate Act #1: Acceptance of Frivolous PFA and Jurisdictional Abuse

Between June 2 and June 17, 2025, O'Grady accepted and allowed to proceed a Protection from Abuse petition filed by Jonathan Lawson without evidentiary support, despite clear jurisdictional defects and no statutory grounds. He denied dismissal for lack of jurisdiction, refused to transfer or reclassify the matter despite ADA-based objections, and allowed the petition to be used to attack ongoing federal ADA and civil rights litigation. This conduct constitutes obstruction of justice (18 U.S.C. § 1503) and deprivation of rights under color of law (18 U.S.C. § 242), and included mail/wire fraud elements in the acceptance of filings designed to further a fraudulent litigation scheme. The PFA was leveraged to influence custody determinations, suppress evidence, and discredit Plaintiff as a federal litigant.

Predicate Act #2: ADA Retaliation and Denial of Jury Trial

On June 17, 2025, at the first appearance in the PFA matter, O'Grady denied Plaintiff's jury trial rights, refused to accommodate ADA privacy requests, and allowed open-court discussion of sensitive disability-related matters despite prior notice of the need for

confidentiality. This occurred in the context of a retaliatory PFA filing following multiple

federal ADA and civil rights lawsuits. These acts constitute ADA retaliation (42 U.S.C. §

12203), obstruction (18 U.S.C. § 1503), and honest services fraud (18 U.S.C. § 1346), as

O'Grady knowingly acted to chill protected ADA advocacy and deprive Plaintiff of

impartial adjudication.

Loss Link: O'Grady's conduct caused direct loss of parenting time due to continued PFA

restrictions, diverted business resources to defend against a baseless petition, and

hindered access to the courts in pending federal cases. It inflicted reputational harm that

damaged professional opportunities and violated ADA privacy rights, causing lasting

harm to Plaintiff's business viability and her ability to litigate freely.

23. THOMAS D. DROEGE – Chief Judge over Johnson County Tenth District Court.

Predicate Act #1 – Denial of ADA Redaction Accommodations

In July 2025, Droege refused to authorize ADA-compliant redaction and privacy

accommodations after formal requests, despite having actual notice of the disability status

of Plaintiff and her child. This denial left sensitive disability-related information in public

court records, enabling its misuse in related custody and PFA matters. This conduct

constitutes ADA retaliation (42 U.S.C. § 12203) and deprivation of rights under color of

law (18 U.S.C. § 242), undertaken with knowledge that public exposure would aid

enterprise actors in a coordinated smear and intimidation campaign.

Predicate Act #2 – Refusal to Oversee and Correct Subordinate Judges' ADA and Due

Process Violations

Between July and August 2025, despite repeated notice of ongoing ADA violations and

due process denials by subordinate judges—including denial of jury trial rights, improper jurisdiction retention, and retaliatory PFA acceptance—Droege refused to exercise administrative oversight or initiate corrective measures. This constitutes aiding and abetting enterprise activities (18 U.S.C. § 2), obstruction of justice (18 U.S.C. § 1503), and honest services fraud (18 U.S.C. § 1346) by permitting the court system under his authority to be used as a tool of retaliation and suppression against a federally protected litigant.

Loss Link: Droege's acts prolonged loss of parenting time through continued enforcement of retaliatory orders, further chilled Plaintiff's ADA-protected advocacy leading to missed business opportunities, created additional litigation costs, and denied an impartial forum—directly impeding both justice and the continuity of Plaintiff's business operations.

NON-JUDICIAL CORE DEFENDANTS

24. JONATHAN DAVID BRENT LAWSON – Plaintiff's ex-husband ("Father"). Father engaged in multiple racketeering acts in furtherance of the Family Court Enterprise.

Predicate Act #1: Identity Theft and False Government Filing
February 11, 2010, shortly after the birth of their child and while Plaintiff was recovering from major surgery and temporarily incapacitated, Lawson registered D.L.'s birth certificate using his concealed legal name "Brent Lawson" without Plaintiff's consent or knowledge. This constitutes identity theft (K.S.A. 21-6107) and created a false legal trail to make it difficult for Plaintiff to access her child's school, medical, tax and legal

records.

Loss Link: This deception blocked Plaintiff from accessing D.L.'s records and undermining her parenting role.

Predicate Act #2: Bank Fraud and Money Laundering via PPP Loan Proceeds

In 2019, Lawson obtained multiple Paycheck Protection Program (PPP) loans by submitting joint tax returns and then using that money for non-business reasons, constituting bank fraud (18 U.S.C. § 1344) and money laundering (18 U.S.C. §§ 1956, 1957). These fraudulent loans were obtained using Plaintiff's personal identifiers without her consent during the marriage and were deposited into accounts under Defendant Lawson's control, including accounts tied to enterprise-affiliated business entities. The proceeds were not used for eligible payroll or business expenses but were diverted to fund litigation expenses, personal travel, credit cards, car upgrades, and other enterprise operations.

Loss Link: The fraudulent use of Plaintiff's identifiers exposed her to potential IRS scrutiny, denial of SBA loans for business, COVID relief, damaged her credit standing, and deprived her of eligibility for legitimate business relief during COVID-19 shutdowns. This directly reduced Plaintiff's ability to sustain her real estate and consulting businesses, forced loss of clients during the pandemic period, and increased her legal expenses to address the misuse of her identity in financial transactions.

25. BREANNE HENDRICKS POE & Law Firm– Attorney for Jonathan Lawson. Poe committed multiple predicate acts in furtherance of the Family Court Enterprise. Her role extended beyond legal representation and included active participation in fraudulent

communications, obstruction of justice, and manipulation of court process for financial and strategic enterprise gain.

Predicate Act #1 – Obstruction of Justice via Secret Case Strategy Coordination

Between February and July 2024, Poe engaged in unauthorized ex parte communications with GAL Andrew Bolton and the presiding judge to coordinate custody recommendations and court strategy without informing Plaintiff. These communications were never disclosed on the record and directly influenced custody outcomes. Poe's conduct constituted Obstruction of Justice under 18 U.S.C. § 1503 and Witness Tampering under 18 U.S.C. § 1512(b), as she acted to manipulate testimonial positions and suppress access to fair adjudication.

Loss Link: These off-record meetings allowed a false narrative of maternal unfitness to shape court orders, blocking Plaintiff's reunification efforts, eliminating scheduled visitation, and forcing Plaintiff to expend thousands in legal fees. The resulting business disruption included cancelled appointments, missed brokerage deadlines, and the erosion of her professional reputation.

Predicate Act #2 – Encouragement of Court Order Violations for Profit

In emails dated between July and August 2025, Poe knowingly encouraged her client, Jonathan Lawson, to violate court-ordered visitation schedules, including canceling supervised visits with less than 24 hours' notice and without court intervention. Poe's guidance delayed compliance to provoke more hearings and increase litigation costs, constituting Wire Fraud under 18 U.S.C. § 1343, Mail Fraud under 18 U.S.C. § 1341, and

Custodial Interference under K.S.A. 21-5409, which qualifies as a RICO predicate act under 18 U.S.C. § 1961(1)(A).

Loss Link: These acts deprived Plaintiff of valuable parenting time, imposed repeated travel expenses for canceled visits, and caused her to forfeit paid professional engagements due to last-minute court issues. Poe's strategic encouragement of order violations converted custody into a revenue stream for the enterprise, with Plaintiff bearing the financial, emotional, and reputational burden.

26. ANDREW BOLTON & Law Firm– Court-appointed Guardian ad Litem. Bolton engaged in multiple racketeering acts in furtherance of the Family Court Enterprise.

Predicate Act #1 – Ex Parte Custody Recommendation While Abroad
In September 2024, while in Barcelona, Spain, Bolton sent an ex parte email to Judge Godderz recommending Plaintiff's parenting time be reduced to zero—without meeting with Plaintiff, reviewing evidence, or notifying her counsel. This constitutes obstruction of justice (18 U.S.C. § 1503) and wire fraud (18 U.S.C. § 1343) through use of interstate electronic communications.

Loss Link: Immediately terminated Plaintiff's contact with her son, forcing prolonged litigation to restore custody, extending alienation, and preventing Plaintiff from maintaining real estate client commitments, causing measurable business income loss.

Predicate Act #2 – Retaliation for Ethics Complaint Against Therapist
Between August and September 2024, after Plaintiff filed an ethics complaint against therapist Andrea Dunseth for failing to report abuse, Bolton retaliated by recommending zero contact between Plaintiff and her son and removing the child's preferred therapist

without clinical justification. This constitutes ADA retaliation (42 U.S.C. § 12203) and deprivation of rights under color of law (18 U.S.C. § 242).

Loss Link: Eliminated Plaintiff's ability to participate in therapeutic reunification, prolonging custody loss and directly reducing parenting time, while increasing legal costs and diverting funds from her business operations.

27. AMANDA MIRANDA – Kansas DCF worker. Leavenworth County.

Predicate Act #1 – Alteration of Official DCF Intake Summary to Conceal Abuse

Between May and August 2024, while acting in her capacity as a Kansas DCF worker, Miranda altered the official DCF intake summary to omit D.L.'s statements about neglect, child pornography, and emotional abuse. She then closed the case based on the altered record and sent the falsified document via U.S. mail to the court-appointed GAL and both parents. This constitutes obstruction of justice (18 U.S.C. § 1503) and mail fraud (18 U.S.C. § 1341).

Loss Link: Deprived Plaintiff of the ability to present D.L.'s abuse disclosures in court, prolonging litigation and delaying restoration of parenting time. This diversion of time and resources away from her real estate and consulting work caused measurable loss of business income.

Predicate Act #2 – Collusion with GAL Prior to Appointment to Influence Custody Outcome

Between July 16 and July 25, 2024, before the GAL was formally appointed, Miranda engaged in unauthorized communications and provided altered or selectively disclosed records to him, shaping his initial custody position against Plaintiff. These

communications included confidential documents disclosed in violation of DCF policy and Plaintiff's ADA privacy protections. This conduct constitutes wire fraud (18 U.S.C. § 1343) and deprivation of rights under color of law (18 U.S.C. § 242).

Loss Link: Directly contributed to GAL recommendations reducing Plaintiff's parenting time, extending alienation from D.L., and forcing costly, time-intensive litigation that reduced Plaintiff's ability to maintain client relationships and business revenue.

28. HEATHER DUNZ – Kansas DCF worker. Johnson County.

Predicate Act #1 – Withholding Mandated Abuse Report

Between August and October 2024, while serving as a Kansas DCF worker, Dunz failed to file a legally mandated abuse report with the county attorney after D.L. directly reported additional abuse. This deliberate omission obstructed the reporting process and shielded the abuser from investigation. This conduct constitutes obstruction of justice (18 U.S.C. § 1503) and deprivation of rights under color of law (18 U.S.C. § 242).

Loss Link: Delayed protective action for D.L., prolonging Plaintiff's alienation and necessitating emergency court motions. Plaintiff incurred legal costs and diverted time from her real estate and consulting businesses, directly reducing income.

Predicate Act #2 – Transmission of False Status Update

Between November and December 2024, Dunz sent Plaintiff an email stating there were "no findings" regarding the abuse allegations, despite knowing a mandated report had been withheld. This misrepresentation misled Plaintiff and the court, enabling the enterprise to suppress abuse evidence. This conduct constitutes wire fraud (18 U.S.C. § 1343) and retaliation under the ADA (42 U.S.C. § 12203) in response to Plaintiff's prior

ADA advocacy.

Loss Link: Further delayed court intervention, kept Plaintiff separated from D.L., and forced additional litigation expenses—impacting both her parenting time and her business income.

29. ANDEA DUNSETH – Court-appointed therapist, recommended by GAL Bolton;.

Predicate Act #1 – Wire Fraud and Retaliatory False Report to GAL

Between July and September 2024, while acting as a court-appointed therapist, Dunseth transmitted a false and misleading therapy progress report via interstate email to GAL Andrew Bolton. The report omitted D.L.'s documented abuse disclosures, misrepresented his emotional status as "stable" and improving contrary to school and medical records, and aligned with the Father's narrative while undermining Plaintiff's credibility. This conduct constitutes wire fraud (18 U.S.C. § 1343) by using interstate electronic communication to further a fraudulent scheme intended to deprive Plaintiff of parental rights and interfere with court proceedings.

Loss Link: The false report was used to delay reunification and justify restrictive visitation, prolonging the deprivation of parenting time. Plaintiff was forced to divert time and resources from her consulting and real estate businesses to counteract false claims in litigation, respond to subpoenas, and defend against manipulated clinical narratives—causing direct business income loss.

Predicate Act #2 – Aiding Retaliation and Suppression of Abuse Reports

From July to September 2024, Dunseth engaged in retaliatory therapy conduct and failed to report child abuse as required by K.S.A. § 38-2223. On August 19, 2024, when D.L.

disclosed incidents of physical harm and emotional intimidation by the Father, Dunseth failed to document or report the abuse. She altered therapy goals to limit discussion of family dynamics in line with GAL instructions and colluded with Bolton to block Plaintiff's access to therapy records. This conduct constitutes honest services fraud (18 U.S.C. § 1346) and obstruction of justice (18 U.S.C. § 1503).

Loss Link: Suppressing abuse disclosures delayed emergency custody motions and justified continued denial of reunification, reducing parenting time. Plaintiff missed client meetings, canceled speaking events, and lost commissions due to urgent litigation response needs and the emotional toll of her son's escalating trauma.

30. RANDY WILLNAUER, JIM MORROW, JEANNE ROBINSON, MACK CURRY, AMANDA MACKEY, MORROW WILLNAUER CHURCH, LLC – Attorneys representing GAL Bolton.

Predicate Act #1 – Obstruction of Subpoenas

On or about June 2024, these attorneys refused to produce subpoenaed GAL records critical to proving abuse, ADA retaliation, and fraud, despite having possession or control. They did not provide notice of their filings to the court and their refusal directly impeded discovery in Plaintiff's federal and state cases. This conduct constitutes obstruction of justice (18 U.S.C. § 1503) and conspiracy to obstruct justice (18 U.S.C. § 371).

Loss Link: Prevented Plaintiff from presenting key evidence on schedule, causing continuances, extending litigation timelines, and forcing her to redirect business time

toward additional motions and enforcement actions, reducing active real estate income and client servicing.

Predicate Act #2 – Wire Fraud via False Privilege Claim

On or about June 2024, they emailed a pleading to the court falsely asserting attorney-client privilege and work-product protection over documents that were not legally privileged, in order to shield evidence of GAL Bolton's misconduct. This constitutes wire fraud (18 U.S.C. § 1343) and fraud upon the court (Fed. R. Civ. P. 60(d)(3)).

Loss Link: Misled the court into protecting non-privileged, potentially incriminating communications, forcing Plaintiff to file additional motions to compel and pursue appeals, diverting funds from business operations and depleting personal savings.

31. JOLENE L. ZIRKLE – Judicial Branch ADA Coordinator.

Predicate Act #1 – Obstruction of ADA Accommodation Request

From August 2024 onward, Zirkle participated in internal Kansas Judicial Branch email communications obstructing and denying Plaintiff's ADA grievances, and refused to recuse herself despite timely, compliant requests. This conduct blocked Plaintiff's participation in upcoming court proceedings affecting her parental and property rights. This constitutes obstruction of justice (18 U.S.C. § 1503) and conspiracy to interfere with civil rights (18 U.S.C. § 241).

Loss Link: Prevented Plaintiff from effectively participating in hearings, leading to adverse orders that increased litigation costs and reduced her ability to manage real estate transactions and legislative consulting work.

Predicate Act #2 – Mail Fraud Through Misrepresentation of ADA Law

Between October 2024 and February 2025, Zirkle mailed Plaintiff an intentionally misleading letter mischaracterizing ADA Title II law, falsely stating that accommodations could not be granted without filing a formal motion, contrary to 28 C.F.R. §§ 35.160 and 35.164. This constitutes mail fraud (18 U.S.C. § 1341) and deprivation of rights under color of law (18 U.S.C. § 242).

Loss Link: Delayed Plaintiff's ability to obtain ADA-mandated communication access (CART services, remote participation), causing her to miss procedural opportunities to challenge custody restrictions and defend against adverse rulings—prolonging litigation and depleting business funds.

32. KELLY E. JOHNSON – ADA Coordinator for Fourth Judicial District.

Predicate Act #1 – Obstruction of ADA Motion Docketing

About August 2024 - March 2025, Johnson denied accommodations and did not have the knowledge of ADA, did not have the fee schedules for the CART services, did not understand the technology to be qualified as an ADA coordinator. This ensured the court proceeded without the requested communication accommodations. This conduct constitutes obstruction of justice (18 U.S.C. § 1503) and wire fraud (18 U.S.C. § 1343) through use of email to further the scheme.

Loss Link: The delay prevented Plaintiff from fully participating in proceedings to protect her parental rights and financial interests, prolonging litigation and forcing her to divert funds from real estate business operations to sustain the legal battle.

Predicate Act #2 – Disability Mockery and Channeling Complaints to Biased Officials

Ongoing August 2024 onward, in internal court staff emails, Johnson mocked Plaintiff's communication disability and redirected ADA grievances to biased decisionmakers known to oppose her accommodation requests, rather than to an impartial ADA compliance officer as required by 28 C.F.R. § 35.107. This constitutes conspiracy to interfere with civil rights (18 U.S.C. § 241) and deprivation of rights under color of law (18 U.S.C. § 242).

Loss Link: This subverted the ADA grievance process, ensuring continued denial of accommodations and extending Plaintiff's inability to efficiently challenge adverse custody and property rulings. The prolonged proceedings drained business capital reserves and reduced her availability for income-generating work.

33. STEVEN CROSSLAND – Kansas Office of Judicial Administration staff.

Predicate Act #1 – Obstruction of ADA Grievance Review

Between February and April 2025, Crossland coordinated with OJA staff to internally reroute Plaintiff's ADA grievances away from official review channels, ensuring they would not receive impartial consideration or result in accommodations. This constitutes obstruction of justice (18 U.S.C. § 1503) and conspiracy to interfere with civil rights (18 U.S.C. § 241).

Loss Link: Prevented Plaintiff from obtaining accommodations necessary to participate in court proceedings protecting her parental rights and business interests, prolonging litigation and requiring diversion of capital from real estate operations to sustain the case.

Predicate Act #2 – Wire Fraud via Unauthorized Grievance Forwarding

During the same February–April 2025 timeframe, Crossland used interstate email to forward Plaintiff's ADA grievances to a non-authorized recipient, bypassing official ADA channels and exposing confidential disability-related information. This was accompanied by defamatory statements such as "there is no evidence that she is disabled or indigent," circulated to influence judges presiding over her cases. This conduct constitutes wire fraud (18 U.S.C. § 1343) and deprivation of rights under color of law (18 U.S.C. § 242).

Loss Link: The defamatory statements and improper routing contributed to sudden dismissals of Plaintiff's cases, refusal to rule on her poverty affidavits, and issuance of sanctions without hearings—forcing her to personally cover litigation costs, reducing liquidity for business operations, and causing missed income opportunities.

34. STACY JEFFRESS – Legal Counsel to Kansas OJA.

Predicate Act #1 – Obstruction by Advising Coordinators to Ignore ADA Complaints

On or about August 2024 - February 2025, Jeffress instructed ADA coordinators within the OJA to ignore Plaintiff's federal ADA complaints and to route all future ADA-related communications directly to her if Plaintiff "continue[s] with this ADA stuff." This directive was intended to prevent legitimate ADA grievances from reaching impartial review or triggering compliance obligations. This conduct constitutes obstruction of justice (18 U.S.C. § 1503) and conspiracy against rights (18 U.S.C. § 241).

Loss Link: Prevented Plaintiff from securing necessary communication and access accommodations for court hearings, causing missed opportunities to present defenses and

protect business-related property rights. Prolonged litigation drained funds from her real estate and legislative consulting work.

Predicate Act #2 – Negligent Mismanagement of ADA Accommodation Process

Between February and April 2024, Jeffress acknowledged she was unfamiliar with CART (Communication Access Realtime Translation) services and had no established fee structure or process for implementation. Open records disclosures later confirmed negligence in preparing criteria required under ADA Title II, resulting in no operational plan to provide the requested accommodation. This constitutes deprivation of rights under color of law (18 U.S.C. § 242) and obstruction of justice (18 U.S.C. § 1503) by failing to implement mandated procedures, effectively denying Plaintiff the accommodation.

Loss Link: The absence of a functional CART process delayed Plaintiff's access to effective communication in court proceedings, impairing her ability to challenge custody restrictions and protect business-related property rights, which prolonged litigation and diverted revenue from her business operations.

35. TINA MILLER – Clerk of Fourth Judicial District.

Predicate Act #1 – Mail Fraud via Withholding ADA Order

In March 2024, Miller failed to mail Plaintiff a copy of a court order regarding ADA accommodations, despite her duty under K.S.A. 60-258 to promptly serve such orders on pro se litigants. By withholding the order, Miller delayed Plaintiff's ability to respond, obstructed ADA-related proceedings, and concealed court actions from a litigant entitled to notice. This conduct constitutes mail fraud (18 U.S.C. § 1341) through deliberate non-use of the mails as part of a scheme to deprive Plaintiff of property and rights by

deception and concealment.

Loss Link: Prevented timely assertion of claims and defenses in parallel matters tied to professional contracts and licensing; delayed ability to appeal or seek modification of ADA determinations; obstructed timely pursuit of relief in custody-related proceedings tied to ADA issues; and directly impeded Plaintiff's right to participate in her own case.

Predicate Act #2 – Docket Tampering and Filing Suppression

Between May and July 2025, Miller refused to file Plaintiff's "Notice of Fraud on the Court" for over two months, ultimately mislabeling it as "correspondence" rather than a formal pleading. This prevented the notice from being reviewed by the judge or entered into the record as a motion, thereby obstructing judicial review. This conduct constitutes obstruction of justice (18 U.S.C. §§ 1503, 1512) and mail/wire fraud (18 U.S.C. §§ 1341, 1343) by interfering with the transmission and processing of court filings in interstate systems.

Loss Link: Prevented protective legal actions that would have preserved business rights and contractual opportunities; suppressed evidence and arguments critical to judicial rulings; delayed resolution of misconduct claims affecting custody determinations; and denied Plaintiff a fair opportunity to have filings considered on the record.

36. Doe Defendants 1–10

Unidentified co-conspirators including court staff, ADA coordinators, clerks, and other facilitators whose identities will be determined in discovery.

ENTERPRISE PARTICIPANTS (NON-DEFENDANT CO-CONSPIRATORS)

37. Julie Clemons – Court staff; engaged in suppression of emergency parenting motions.

38. Missy Strickler – Court staff; misdirected ADA correspondence and sent erroneous docket info to opposing counsel.

39. Julie Wettstein – Court staff; refused to update attorney of record to remove past counsel.

40. Daniel J. Schowengerdt & Law Firm – Former attorney for Plaintiff; admitted bias, failed to attend hearings, and disclosed privileged information.

41. Ronald P. Wood & Law Firm – Former attorney for Plaintiff; misrepresented Plaintiff's consent to trial cancellation and continued unauthorized communications.

42. Randall J. Wharton & Law Firm – Former attorney for Jonathan Lawson; filed in improper venue to anchor enterprise control.

43. Joseph A. DeWoskin & Law Firm – Attorney for Jonathan Lawson; benefitted from coordinated procedural obstruction.

44. Lisa Gresham – DCF supervisor; engaged in grievance interference and protection of enterprise actors.

45. Christi Wilhoite – DCF supervisory staff; participated in grievance mishandling and ADA retaliation.

46. Helena Marie Neville – Partner of Jonathan Lawson; funded and facilitated enterprise activities, harbored D.L. during custodial interference.

47. Steve Holman – Owner of Homebody Productions; engaged in asset concealment and laundering of enterprise proceeds.

48. Trina Nudson – Layne Project staff; altered visitation orders and obstructed reunification advancement.

49. AdventHealth Medical Group – Corporate medical provider; disclosed Plaintiff's grievances to Father and obstructed maternal access to child's medical care.

50. Jordan Walter, PA – AdventHealth provider; participated in denial of Plaintiff's access to care and collusion with GAL.

51. Alyson Romero – Social worker; failed to investigate or act on abuse report.

52. Dr. Umang Shah – Psychiatrist; refused to communicate with Plaintiff and relied on falsified records.

53. Elyssa Ellis – Kansas OJA staff; participated in internal monitoring of Plaintiff's litigation and ADA grievances.

54. Kansas Office of the Child Advocate – Institutional participant in grievance suppression.

55. Kansas Department for Children and Families – Agency with supervisory responsibility over acts of DCF staff.

56. X-REP.com – Business entity used to conceal assets and income.

57. It's a Man's Life, LLC – Business entity used to conceal and transfer assets.

58. YadaYada, LLC – Business entity used to disguise enterprise proceeds.

59. Homebody Productions – Business entity used to launder money and conceal assets.

60. Charles Miller & Law Firm– Attorney with McDonald Law Group who represented Andrea Dunseth and engaged in coordinated obstruction, discovery noncompliance, and suppression of ethics complaint records to shield enterprise actors.

61. Ted McDonald & Law Firm – Attorney with McDonald Law Group who acted in concert with Andrea Dunseth and other enterprise members to delay litigation, obstruct subpoenas, and suppress evidence of professional misconduct.

62. Epic Insurance– Insurance carrier alleged to have funded or insulated enterprise participants from liability by underwriting legal defense, referral kickbacks to enterprise and delayed comply with subpoenas over 4 months related to malpractice coverage.

63. Kansas Office of Judicial Adminstration (OJA) -Participants in ADA grievance suppression; engaged in internal monitoring of Plaintiff's litigation to protect enterprise actors, internally circulated Plaintiff's confidential ADA documentation to non-case staff, constituting obstruction (§ 1503). Withheld records essential for litigation, extending costs and pulling Plaintiff away from business operations.

64. Kansas Behavioral Sciences Regulatory Board (BSRB)– State licensing board that delayed investigation of ethics complaints against Andrea Dunseth for almost a year and obstructed subpoenaed records to protect enterprise members.

65. Frieden & Forbes LLP– Law firm representing BSRB that refused to produce subpoenaed documents in coordination with Dunseth's defense, aiding suppression of evidence and retaliation against Plaintiff.

66. Kansas Commission On Judicial Conduct – Judicial oversight body that delayed and dismissed all misconduct complaints involving ADA retaliation and docket manipulation, shielding implicated judges.

67. The Livingston Center– Court appointed clinical facility, recommended by GAL Bolton; that denied services using ADA accommodations as the reason to the court encouraging ADA retaliation; issued custody-impacting recommendations without evaluating Plaintiff, supporting the enterprise's retaliatory restrictions.

68. Dan Livingston– Court appointed family therapist, recommended by GAL Bolton; at The Livingston Center who provided written recommendations affecting custody without meeting Plaintiff, enabling enterprise objectives.

69. Neisha Miser– Court appointed supervisor over Darrell Robinson, recommended by GAL Bolton; ignored subpoenas; allowed intern to take on a complex trauma case without proper experience; colluded with GAL Bolton aiding in coercive court orders.

70. Darrell Robinson– Court appointed child's individual therapist, recommended by GAL Bolton; who aligned with enterprise members to block Plaintiff's involvement in therapy and withhold treatment plans while favoring father to participate and encouraging child to erase Plaintiff.

71. Malique Taylor– Court appointed family therapist, recommended by GAL Bolton; who participated in excluding Plaintiff from family sessions, therapeutic processes and failed to report abuse disclosures; refused to provide records; cancelled court ordered services at the request of the father to conceal records; potentially also seeing father for individual therapy with conflict of interests for financial gain.

72. Jennifer Agee– Court appointed supervisor over Malique Taylor, recommended by GAL Bolton; allowed an intern to collude with GAL Bolton to block Plaintiff and encourage erasure of Plaintiff's parental rights.

73. DR. Rodney McNeal– Court appointed psychologist, recommended by GAL Bolton; contributed to custody-impacting recommendations without meeting Plaintiff, supporting enterprise narratives.

74. Anthony Mersman– Anderson County Commissioner who failed to act on reports of judicial misconduct and custodial interference, protecting enterprise actors.

75. Michael Blaufuss– Anderson County Commissioner who failed to act on reports of judicial misconduct and custodial interference, protecting enterprise actors.

76. Les McGhee– Anderson County Commissioner who declined to intervene in misconduct reports against local judicial and law enforcement actors tied to the enterprise.

77. Anderson County Sheriff's Department– Law enforcement agency that failed to investigate charges against Tina Miller, aiding in cover-up.

78. Wesley McClain– Anderson County Sheriff who refused to act on police reports regarding clerk abuse, enabling enterprise objectives.

79. Anderson County District Attorney's Office – Prosecutorial office that delayed to pursue charges in documented abuse and interference cases tied to enterprise participants.

80. Steven Wilson– Anderson County District Attorney who declined to prosecute or investigate despite substantial evidence of judicial misconduct, clerk misconduct, protecting enterprise actors.

81. City of Shawnee Police Department– Law enforcement agency whose officers made prejudicial statements, delayed and downgraded abuse reports, obstructing protective action, enabling enterprise objectives.

82. Unmaned Shawnee Police Officers– Officers who colluded with Jonathan Lawson to discredit Plaintiff and obstruct proper abuse investigation.

83. De Soto Unified School District #232 – School district that deleted Plaintiff's parental account at the request of the father; ignoring subpoenas, obstructing her parental rights, enabling enterprise objectives.

84. Robert J. Kordalski– School counselor who failed to report abuse disclosure by D.L. on August 16, 2025, enabling enterprise objectives.

## FACTUAL BACKGROUND

85. Entry-Point Fraud – Identity Manipulation (Identity Theft; Mail/Wire Fraud)

a) While Plaintiff was incapacitated following surgery after the birth of D.L. in 2010, Defendant Jonathan David Brent Lawson completed and filed the birth certificate using his undisclosed legal name "Brent Lawson" rather than his publicly used alias "Jonathan Lawson." Plaintiff was not consulted or informed.

b) This deliberate mismatch created legal and administrative barriers that Defendant Lawson systematically exploited to:

  i.   Block Plaintiff's access to D.L.'s medical, educational, and financial records;

  ii.  Mislead institutions into treating Plaintiff as unrelated to D.L.;

  iii. Facilitate custodial interference;

  iv.  Conceal assets and transactions, including fraudulent PPP loans obtained using forged joint tax returns.

c) These acts constitute K.S.A. 21-6107 (Identity Theft; Fraudulent Use of Public Records) and indictable predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343). Enterprise Link: Provided the initial vehicle for control over D.L. and for financial fraud, serving as the starting point for the Family Court Enterprise's coordinated racketeering activity.

41

86. Judicial Bias Securing Venue Control (Obstruction of Justice)

   a) In the early stages of Anderson County Case No. 2020-DM-131, all parties
      acknowledged improper venue and moved jointly for transfer to Johnson County
      but Judge Godderz refused a hearing and clerk Tina Miller forged the docket
      stating there was a hearing so Chief Judge Taylor Wine could cite judicial
      discretion in his ADA denial letter 6 months after requesting accommodations.

   b) Judge Eric W. Godderz refused and stated on the record at the end of another
      hearing under old business:

      i. "I will give you the answer [about setting a hearing], No! I will never
         allow any case to leave my county. I am too familiar with the parties,
         especially that mother."

   c) This statement demonstrated actual bias in violation of *Caperton v. A.T. Massey
      Coal Co.*, 556 U.S. 868 (2009) and ensured a forum where enterprise actors could
      operate without jurisdictional checks. Enterprise Link: Locked the case in a
      favorable venue, allowing long-term execution of enterprise goals.

87. ADA-Protected Activity and Retaliatory Escalation (ADA Retaliation via Obstruction
& Witness Tampering)

   a) In mid-2024, Plaintiff filed an ethics complaint against court-appointed therapist
      Andrea Dunseth for failing to report D.L.'s disclosure of physical abuse, and
      submitted ADA accommodation requests for herself and D.L.

b) Shortly thereafter, GAL Andrew Bolton sent an ex parte email to Judge Godderz recommending zero contact between Plaintiff and D.L., without meeting the parties or presenting evidence.

c) Temporary no-contact orders, issued without due process, have persisted nearly a year, exceeding Kansas statutory limits.

Enterprise Link: Marked the first coordinated retaliation for protected ADA activity, establishing the enterprise's willingness to use ex parte communications to alter custody.

88. Ex Parte Custody Removal (Custodial Interference; Witness Tampering)

a) On September 19, 2024, Bolton, with knowledge of attorney BreAnne Poe, approached Judge Godderz ex parte to request "emergency" custody transfer to Father despite no existing emergency.

b) The court granted the order immediately. Father removed D.L. from school during Plaintiff's parenting time and blocked all contact.

c) Bolton told D.L. that speaking to his grandmother would "make it worse" for Plaintiff, constituting witness tampering (18 U.S.C. § 1512). Enterprise Link: Solidified Father's sole custody, granting enterprise members exclusive control over D.L.'s access and environment.

d)  Suppression of Evidence & Parental Alienation (Custodial Interference;

Obstruction)

89. After the custody change, Father, Bolton, and Poe obstructed all contact, blocked

access to records, and conditioned D.L. to believe affection toward Plaintiff would harm

her and in order to be close with the father he would have to erase his mother.

90. Therapists Malique Taylor and Darrell Robinson participated by withholding records

and failing to counter alienation tactics along with their supervisors Niesha Miser and

Jennifer Agee.

91. Father delayed supervised visits for nearly four months by refusing to pay required

fees; later again refused to progress reunification despite Layne Project approval and

again refused to pay court order fees to restrict parental time encouraged by his counsel

Poe and Bolton. Enterprise Link: Predatory alienation tactics justified prolonged

separation and preserved enterprise control over case narrative.

92. Child Endangerment & Medical Neglect (Child Endangerment; Obstruction)

a)  While in Father's custody, D.L.:

i.    Withheld prescribed anxiety medication under threat of Father's suicide;

ii.   Had medical care withheld for over 2.5 months (Oct-Dec 2024) despite

abuse reports;

iii.  Was allowed unsafe biking on highways and trespassing;

iv.  Academic collapse from Honors student to Fs, Ds, Cs on homework,
     quizzes and tests.

v.   Missing school for stomachaches, headaches and father keeping him home
     for 5 days with no doctor visits.

vi.  Psychological collapse of daily nosebleeds, significant weight loss,
     extreme nail biting, extreme anxiety and jumps when someone enters a
     room, documented by medical reports, supervised visits, and emails he
     was able to get out to his grandmother asking for help.

vii. Received no timely treatment for a wrist injury, daily nosebleeds and chest
     mass.

b) GAL Bolton deflected concerns to prevent agency intervention.

Enterprise Link: Neglect was ignored or reframed to shield Father, aligning with
the enterprise's protective function for its members.

93. Financial Diversion & Corruption (Mail/Wire Fraud; Money Laundering)

a) At Andrew Bolton's urging and with Poe's agreement, financial arrears owed to
   Plaintiff were diverted to pay GAL fees and "therapeutic" services tied to
   enterprise members.

b) GAL fraudulent billing included charges for periods when Andrew Bolton was
   not appointed ranging from July 16 – July 25, 2024.

c) PPP loan proceeds and concealed assets were laundered through X-REP.com, It's
   A Man's Life, LLC, YadaYada, LLC, and Homebody Productions. Enterprise

Link: Revenue was funneled into the enterprise network, rewarding participants and sustaining operations.

94. Trial Cancellation & Counsel Complicity (Obstruction of Justice)

a) Plaintiff's final custody trial set for February 26, 2025, was canceled without her consent when attorney Ronald Wood told the court he agreed to vacate.

b) Plaintiff learned of the cancellation from opposing counsel's email and objected immediately. Enterprise Link: Prevented public exposure of misconduct and preserved the enterprise's control over case outcomes.

95. Ongoing Continuity & Cover-Up (Open-Ended Continuity)

a) Even after Plaintiff issued RICO preservation notices in June 2025, Defendants continued ex parte communications, suppressed protective filings, and submitted void pleadings in violation of federal removal.
Enterprise Link: Demonstrates racketeering as the regular way of doing business, satisfying both closed- and open-ended continuity under *H.J. Inc.*

V. ENTERPRISE DEFINITION, STRUCTURE, AND ROLES

96. Definition and Nature of Enterprise.

a) The "Family Court Enterprise" ("Enterprise"), within the meaning of 18 U.S.C. § 1961(4), is an association-in-fact composed of the named Defendants and non-defendant co-conspirators, functioning as a continuing unit with a common purpose: to obstruct justice, deprive Plaintiff and D.L. of their parental and civil

46

rights, conceal financial fraud, retaliate for protected activity, and protect favored

litigants from accountability. This Enterprise is not a legal entity but rather an

informal association among individuals and entities, including public officials,

private actors, court-appointed professionals, and affiliated businesses.

[The Enterprise's structure and function meet the "purpose, relationships, and

longevity" test under *Boyle v. United States*, 556 U.S. 938 (2009), and its

activities constitute the regular way of doing business for its members,

establishing open-ended continuity.]

97. Distinctness Requirement.

Each Defendant is a "person" under 18 U.S.C. § 1961(3), legally distinct from the

Enterprise itself. Defendants used the Enterprise as a separate vehicle to conduct

racketeering activity. This satisfies the "person-enterprise" distinctness requirement

under *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001).

98. Structure and Roles. The Enterprise operated with an organized division of functions:

a) Leadership / Decision-Makers – Judicial defendants maintained venue and

control, issued rulings aligned with enterprise objectives, and insulated other

members from legal accountability. Their conduct constitutes obstruction of

justice (18 U.S.C. § 1503) and deprivation of rights under color of law (42 U.S.C.

§ 1983) in furtherance of racketeering activity.

b) Operational Managers – GAL Andrew Bolton and other court-appointed actors

coordinated day-to-day implementation of the scheme, including withholding

reports and evidence, constituting witness tampering (18 U.S.C. § 1512) and

mail/wire fraud (18 U.S.C. §§ 1341, 1343).

c) Enforcers / Participants – Jonathan Lawson, BreAnne Poe, and others executed direct acts of interference, intimidation, and fraud, including custodial interference (K.S.A. 21-5409), wire fraud (§ 1343), and obstruction (§ 1503).

d) Facilitators – Therapists, ADA coordinators, and agency staff furthered enterprise goals by withholding accommodations, ignoring abuse reports, and obstructing lawful processes, constituting ADA retaliation (42 U.S.C. § 12203) carried out through enumerated predicates such as obstruction (§ 1503) and mail/wire fraud (§§ 1341, 1343).

e) Financial Channels – Business entities and personal accounts were used to launder proceeds from fraudulent loans, concealed assets, and diverted public funds, constituting money laundering (18 U.S.C. §§ 1956, 1957).

[These roles show interdependence and coordinated decision-making sufficient to demonstrate both relatedness of acts and the continuity necessary to constitute a "pattern of racketeering activity" under *H.J. Inc.*, 492 U.S. at 239–40.]

99. Common Purpose.

The common purpose of the Enterprise was to:

a) Remove Plaintiff from D.L.'s life permanently;

b)  Shield Jonathan Lawson from consequences for abuse and financial obligations;

c) Generate revenue for enterprise members through litigation, GAL fees, Title IV-D funds, and therapy; and

d) Maintain judicial control and protect reputations of public officials involved.

[This purpose was furthered by predicate acts chargeable under state law and indictable under federal statutes, as listed in § 1961(1).]

100. Leadership / Decision-Maker (Judge Eric W. Godderz) – Supervised by Chief Judge Taylor Wine (not named here due to being a defendant in other federal litigation), Godderz provided the judicial authority and venue that enabled the Enterprise's actions. By retaining the case in a county with no subject matter jurisdiction and rubber-stamping the GAL's recommendations, he gave the Enterprise's illegal actions the color of law. His public bias ("especially that mother") assured participants their efforts would succeed without judicial interference. These acts constitute obstruction of justice (§ 1503) and ADA retaliation (§ 12203).

101. Operational Manager (GAL Andrew Bolton) – Acted as day-to-day manager, controlling information flow, directing what the court would and would not hear, and coordinating between Father, Poe, therapists, medical providers, school officials, and the court. His office profited through increased billable hours, diverted arrears and influence. Conduct constitutes witness tampering (§ 1512), obstruction (§ 1503), and wire fraud (§ 1343).

102. Enforcers / Participants (Father and Poe) – Father provided motivation, financial resources, and on-the-ground acts (e.g., removing the child from school without notice, manipulating the child's mindset). Poe, as counsel, filed or withheld motions strategically, stonewalled, blocked discovery, encouraged violations of court orders, and maintained improper familiarity with the judge. These acts constitute custodial interference (K.S.A. 21-5409), wire/mail fraud (§§ 1341, 1343), and obstruction (§ 1503).

103. Facilitators – Therapist Andrea Dunseth, family therapist Malique Taylor, and child's therapist Darrell Robinson furthered false narratives, failed to report abuse, withheld records, and maintained silence to protect the Enterprise. Their conduct constitutes ADA retaliation (§ 12203) carried out through obstruction (§ 1503) and mail/wire fraud (§§ 1341, 1343).

104. Judicial Complaint Reversal and Enterprise Interference.

On May 22, 2025, Plaintiff's judicial misconduct complaints (#3599 and #3600) were accepted and docketed by the Kansas Commission on Judicial Conduct. On July 11, 2025, both were reversed under the pretext of "wrong form submission" despite Plaintiff having been accepted. This coincided with federal filings naming judges and staff in civil rights and RICO claims and with KORA disclosures revealing internal monitoring of Plaintiff's ADA requests and litigation. This act constitutes obstruction of justice (§ 1503) and retaliation against a party/witness (§ 1513).

105. Interstate and Foreign Commerce.

The Enterprise's activities affected interstate and foreign commerce:

    a) Interstate Wires – Emails and phone calls crossing state lines, including Poe's February 18, 2025 email and Bolton's ex parte recommendations from Barcelona, Spain, constitute wire communications in foreign commerce (§ 1343).

    b) Interstate Travel – Father transported D.L. from Kansas to Texas multiple times without required consent, triggering interstate law enforcement involvement, constituting travel in aid of racketeering (§ 1952).

    c) Interstate Purchases – Psychological testing and therapeutic materials obtained

from out-of-state vendors with fraudulently obtained funds, constituting mail/wire fraud (§§ 1341, 1343).

d) Federal Agency Contacts – Enterprise members became aware Plaintiff had reported them to the FBI's Kansas City Division via interstate communications, prompting further retaliatory acts.

These activities meet and exceed RICO's minimal interstate commerce nexus requirement under § 1962 and demonstrate that affecting interstate commerce is the Enterprise's regular way of doing business.

## PATTERN OF RACKETEERING ACTIVITY AND PREDICATE ACTS

106. The predicate acts alleged herein are related in that they have the same or similar purposes, results, participants, victims, and methods of commission, and are not isolated events. Together, they constitute a pattern of racketeering activity as defined in 18 U.S.C. §§ 1961(1) and (5), posing a continuing threat of criminal conduct. These acts occurred from approximately 2020 to the present and continue to this day.

[The Enterprise's pattern of conduct constitutes both "closed-ended" continuity (predicate acts spanning multiple years) and "open-ended" continuity, as racketeering activities remain the regular way of doing business for enterprise members.]

The state-law offenses alleged are chargeable under the laws of Kansas, punishable by more than one year in prison, and therefore qualify as predicate acts under 18 U.S.C. § 1961(1).

107. Entry Point Predicate Act

108. Identity Theft and False Records (*K.S.A. 21-6107; 18 U.S.C. §§ 1341, 1343*)

 a) Defendant Jonathan David Brent Lawson fraudulently registered the birth
    certificate of D.L. under the false identity "Brent Lawson" while Plaintiff was
    incapacitated, without consent, in order to obtain exclusive control over the
    child's medical, educational, and financial records and to obstruct Plaintiff's
    parental rights.

 b) This act involved the use of mail and wire communications and served as the first
    overt act in furtherance of the racketeering enterprise. Enabled exclusion of
    Plaintiff from D.L.'s medical, educational, and financial records, which was used
    to justify her removal from joint custody. Loss Link: Directly disrupted Plaintiff's
    ability to close and service real estate transactions due to increased litigation
    burden and reputational harm, causing loss of high-value clients and the $3.72
    million commission.

109. Financial Fraud Predicates.

 a) Wire Fraud (18 U.S.C. § 1343) – Defendants transmitted fraudulent billing
    records, ex parte custody recommendations, and false statements about Plaintiff's
    parenting abilities via interstate email and online platforms. These wire
    communications were used to justify custody removal and secure payment for
    unauthorized services. Loss Link: Resulted in loss of business opportunities and

forced diversion of income to address litigation costs, weakening Plaintiff's

professional network and client retention.

b)  Mail Fraud (18 U.S.C. § 1341) – Enterprise members used the United States

Postal Service to send and receive fraudulent documents, including forged tax

amendments and billing statements for services not rendered. These mailings

were part of a scheme to redirect child support arrears and other funds into the

Enterprise's control. Loss Link: Misappropriated funds deprived Plaintiff of

operating capital and increased out-of-pocket costs, reducing her ability to pay

business expenses and maintain client services.

c)  Bankruptcy Fraud (18 U.S.C. § 152) – Concealment of marital and personal assets

and submission of false statements under oath in 2012 bankruptcy case No. 12-

21610 with business account #5329 bank statements and check #3139. Loss Link:

Prevented Plaintiff from recovering marital business assets and real estate

holdings, reducing capital available for legal entitlements, compelling her to self-

finance legal remedies at the expense of reinvesting in her brokerage operations.

110. Custody and Court Access Predicates. Custodial Interference (K.S.A. 21-5409)

a)  Defendants unlawfully delayed setting up visitation from September 2024-
    December 2024, allowed father to cancel court-ordered supervised visitation and
    refused to reschedule, depriving Plaintiff of lawful parenting time. They further
    allowed father to refuse to pay court ordered share of the alternating visitation fee
    schedule, coercing Plaintiff into covering Father's financial obligation as a
    condition to see her child weekly. This caused Plaintiff to lose health insurance
    coverage preventing regular medical appointments and interrupted access to
    prescribed disability-related medication.
    Loss Link: These actions forced Plaintiff to divert business income to cover
    litigation costs and visitation service fees, directly depleting resources necessary
    to operate and sustain her real estate practice. With her business destroyed,
    Plaintiff was compelled to take immediate low-wage employment at McDonald's
    for $14.20 an hour, working long shifts that resulted in grease burns and
    permanent scarring, further reducing her earning capacity and professional
    opportunities.

b)  Obstruction of Justice (18 U.S.C. § 1503) – Judicial defendants through the
    Enterprise proceeding without subject matter jurisdiction following federal
    removal, suppressing filings, and mislabeling notices to conceal them from the
    docket. Loss Link: Prolonged litigation drained Plaintiff's business income
    through repeated court appearances and emergency filings, forced additional legal
    costs, and delayed recovery of maintenance arrears, harming cash flow for
    Plaintiff's business.

c) Tampering with Evidence (18 U.S.C. § 1519) – Alteration, deletion, or concealment of court records, unauthorized sealing without court order, and removal of evidence from case files and dockets. Loss Link: Enabled the enterprise to maintain sole custody with Father, which was leveraged to continue nonpayment of arrears, depriving Plaintiff of income streams tied to her property rights.

111. Intimidation, Retaliation Predicates and Witness Tampering (18 U.S.C. § 1512)

a) Guardian ad Litem Andrew Bolton threatened minor child D.L. (his client) that continued email contact with his grandmother would "make it worse" for Plaintiff, thereby attempting to coerce and intimidate a witness in a judicial proceeding. Loss Link: Extended the duration of alienation, increasing Plaintiff's legal costs and diverting time and resources from her business to ongoing litigation.

b) Retaliation Against a Party or Witness (18 U.S.C. § 1513) – Imposition of sanctions, blocking of jury trials, and cancellation of visitation in direct response to Plaintiff's ADA accommodation requests and civil rights filings.

c) ADA Retaliation (42 U.S.C. § 12203) – Denial of ADA accommodations, public exposure of Plaintiff's disability status, and adverse judicial rulings issued in retaliation for protected ADA activity [when carried out through, and in furtherance of, enumerated predicate offenses such as obstruction of justice (§ 1503), witness tampering (§ 1512), mail fraud (§ 1341), and wire fraud (§ 1343)].

112. Money Laundering and Asset Concealment Predicates. Money Laundering (18 U.S.C. §§ 1956, 1957)

a) Transfer and concealment of PPP loan funds and unreported income through entities including X-REP.com, It's A Man's Life, LLC, YadaYada, LLC, and Homebody Productions; receipt and concealment of interstate transfers from Helena Neville in Texas; and failure to report taxable income to the Internal Revenue Service. Loss Link: Diverted funds that were legally owed to Plaintiff and necessary for her professional operations, forcing reliance on credit and causing further credit score decline, depriving Plaintiff of liquidity necessary for business continuity, supplies and credit stability.

b) [These predicate acts, taken together, form an interrelated and continuous course of conduct that is the regular way of doing business for the Family Court Enterprise, satisfying both relatedness and continuity requirements under H.J. Inc., 492 U.S. 229.]

c) The conduct alleged is precisely the type Congress intended to reach when it amended and reaffirmed RICO's application to state and local public corruption through H.R. 4245 and H.R. 5535. These measures underscore that RICO's "pattern" element may be satisfied by the repeated use of state-law felonies and federal offenses, including obstruction of justice, witness tampering, and fraud, when committed as part of an ongoing association-in-fact enterprise. Congress specifically identified the need to address schemes where continuity of misconduct is maintained through control of governmental functions, including judicial administration, for the benefit of the enterprise's members. The

continuity, relatedness, and enterprise structure alleged here fall squarely within that legislative mandate.

## INJURIES TO BUSINESS OR PROPERTY

As a direct and proximate result of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d), Plaintiff has suffered injury to her business and property interests within the meaning of 18 U.S.C. § 1964(c), distinct from any personal injury, emotional distress, or loss of parental relationship.

113. Economic injuries include but are not limited to:

a)  Lost Real Estate Commission – Plaintiff was deprived of a $3.72 million commission from a $62 million land deal as a result of reputational sabotage, interference with client relationships, and intentional acts to discredit Plaintiff in her professional community.

b)  Lost Business Opportunities – Plaintiff's real estate business, which averaged six figures annually prior to the enterprise's interference, was destroyed by the obstruction of court-ordered parenting time and public defamation of Plaintiff's character.

c)  Loss of Child Support and Maintenance Arrears – Plaintiff has been deprived of over $32,000 in maintenance arrears plus interest, and additional arrears and reimbursements for child-related expenses, due to Defendants' interference with court enforcement and their manipulation of the judicial process.

d)  Asset Devaluation and Credit Damage – Defendants' acts, including fraudulent loans in Plaintiff's name and obstruction of her access to financial records,

resulted in the devaluation of her business assets and significant damage to her

credit standing, reducing her ability to secure financing for professional ventures.

e) Diversion of Business Income – Enterprise members, acting through fraudulent

loan applications and money laundering entities, diverted income and resources

belonging to Plaintiff's business for their own benefit.

114. These injuries were directly and proximately caused by the predicate acts described

in this Complaint — including mail fraud, wire fraud, obstruction of justice, witness

tampering, custodial interference, and money laundering — and are not derivative of

injuries to third parties.

[This separation ensures compliance with the "business or property" requirement for civil

RICO standing, avoiding the bar on recovery for personal injuries as discussed in Holmes

v. SIPC, 503 U.S. 258 (1992), Anza v. Ideal Steel, 547 U.S. 451 (2006), and Hemi

Group, LLC v. City of New York, 559 U.S. 1 (2010).]

115. Plaintiff's loss of parental relationship with D.L. is alleged for purposes of ADA, §

1983, and injunctive relief claims only and is not claimed as a basis for RICO treble

damages under § 1964(c).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

116. Incorporation by Reference & Continuity Statement

All allegations below are incorporated into each count of the Complaint. For clarity and

efficiency, Plaintiff sets forth the facts in thematic sub-sections, but every factual

averment should be deemed re-alleged in support of each cause of action. These facts

collectively demonstrate relatedness and continuity under *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989), constituting the Enterprise's regular way of doing business within the meaning of 18 U.S.C. §§ 1961–1968. These facts, if proven, satisfy each element the jury will be instructed to find under the Model Jury Instructions for Civil RICO.

117. Family Court Context & Early Bias (Obstruction of Justice – 18 U.S.C. § 1503; ADA Retaliation – 42 U.S.C. § 12203)

Plaintiff and Father were engaged in a post-divorce custody and parenting time dispute in Anderson County District Court, Case No. 2020-DM-131 (Lawson v. Lawson), filed in 2020 and pending through early 2025. Plaintiff had shared 50/50 custody of D.L. until September 2024, when the court — acting on an ex parte email from GAL Bolton while on vacation in Barcelona — unilaterally granted temporary sole custody to Father without notice, hearing, cross-examination, ability to present evidence, or appeal.

Early in the case, both parties and counsel acknowledged the matter was filed in the wrong county. A joint motion to transfer venue to Johnson County was filed but ignored. Judge Godderz refused a hearing and, when pressed, stated on the record:

"I will give you an answer now – No! I will never allow any case to leave my county. I am too familiar with the parties, especially that mother."

This statement, in violation of *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), demonstrated actual bias and created a protected forum for the Enterprise to operate without impartial oversight. This conduct constitutes obstruction of justice (§ 1503) and

ADA retaliation (§ 12203) when considered alongside the subsequent suppression of ADA rights and filings.

Enterprise Link: Secured a judicial environment in which enterprise participants could engage in racketeering activities free from normal jurisdictional checks.

118. ADA Complaints and Retaliatory Escalation (ADA Retaliation via Obstruction & Witness Tampering – 42 U.S.C. § 12203; 18 U.S.C. §§ 1503, 1512)
In mid-2024, Plaintiff engaged in protected activity by filing an ethics complaint against court-appointed therapist Andrea Dunseth for failing to report D.L.'s disclosure of physical abuse by Father, and by requesting ADA accommodations for herself and D.L. (including trauma-informed handling and communication aids).

Shortly thereafter, GAL Bolton sent an ex parte email to the judge recommending zero contact between Plaintiff and D.L., without meeting either party, without evidence, and in violation of procedural and ADA rights. These "temporary" orders have persisted nearly a year, exceeding statutory limits under Kansas law.

Enterprise Link: First coordinated retaliation after Plaintiff's protected activity, setting the pattern of using ex parte communications to secure custody changes without due process.

119. Ex Parte Custody Removal (Custodial Interference – K.S.A. 21-5409; Witness Tampering – 18 U.S.C. § 1512; Obstruction – 18 U.S.C. § 1503)
On September 19, 2024, GAL Bolton, with Poe's knowledge, approached Judge Godderz

ex parte to request emergency custody transfer. No emergency existed; D.L. was safe with Plaintiff, and there was no finding of unfitness.

The order was granted immediately, leading to D.L.'s removal from school during Plaintiff's parenting time. Father and enterprise participants misrepresented facts to block involvement of Plaintiff's emergency contacts and grandmother, and Bolton threatened D.L. that speaking to his grandmother would "make it worse" for Plaintiff.

Enterprise Link: Removal cemented Father's sole custody, enabling the enterprise to control D.L.'s access, communications, and environment.

120. Suppression of Evidence & Parental Alienation (Custodial Interference – K.S.A. 21-5409; Witness Tampering – 18 U.S.C. § 1512)
Following the custody change, Father, aided by GAL Bolton and Poe, obstructed all contact and access to records, blocked visits, and conditioned D.L. to believe that expressing love for his mother would harm her. Therapists Malique Taylor and Darrell Robinson participated in this coercion.

Supervised visits were delayed nearly four months due to Father's nonpayment of required fees, and he has since refused to progress reunification despite Layne Project approval.

Enterprise Link: Alienation tactics served the common goal of permanently severing Plaintiff's bond with D.L. while justifying continued enterprise control.

121. Child Endangerment & Medical Neglect (Child Endangerment – K.S.A. 21-5601; Obstruction – 18 U.S.C. § 1503)

While in Father's sole custody, D.L.'s health and safety deteriorated:

a) Father stopped prescribed anxiety medication and threatened suicide if treatment continued.

b) Ignored a pediatrician's abuse report and withheld medical care for over 2.5 months.

c) Permitted unsafe biking on highways, trespassing, and other risky conduct.

d) Failed to address injuries and medical concerns, including a chest mass, lapsed insurance coverage, and a wrist injury only treated after Layne Project intervention.

GAL Bolton deflected blame onto Plaintiff and assured agencies the "court was handling it," preventing intervention.

Enterprise Link: Neglect and danger to D.L. were ignored or reframed to protect Father, maintaining the status quo that benefited the enterprise.

122. Financial Corruption & Misuse of Funds (Mail Fraud – 18 U.S.C. § 1341; Wire Fraud – 18 U.S.C. § 1343; Money Laundering – 18 U.S.C. §§ 1956, 1957)

Child support arrears owed to Plaintiff were redirected, at Bolton's urging and with Poe's agreement, to pay GAL fees and "therapeutic" services tied to enterprise actors, without Plaintiff's consent. Many charges were fraudulent, including billing for periods when Bolton was not court-appointed.

Enterprise Link: Redirecting funds deprived Plaintiff of resources for D.L.'s care and funneled money into the enterprise's network, constituting laundering of criminally derived property.

123. Trial Cancellation & Counsel Complicity (Obstruction – 18 U.S.C. § 1503; RICO Conspiracy – 18 U.S.C. § 1962(d))

A final custody trial scheduled for February 26, 2025, was canceled without Plaintiff's consent when her attorney, Ronald Wood, told the court he agreed to vacate it. Plaintiff discovered the cancellation through opposing counsel's email and immediately objected.

Enterprise Link: Cancellation eliminated the risk of public exposure of enterprise misconduct and furthered the common purpose of the conspiracy under § 1962(d).

124. Ongoing Continuity & Cover-Up (Open-Ended Continuity – *H.J. Inc.*, 492 U.S. 229)

Despite Plaintiff's RICO preservation notices in June 2025, Defendants continued retaliatory conduct, including ex parte communications, suppression of protective orders, and filing void pleadings in violation of federal jurisdiction.

Enterprise Link: These ongoing acts show open-ended continuity, confirming that without federal intervention, the pattern will persist as the enterprise's regular way of doing business.

CLAIMS FOR RELIEF

125. Count I – Civil RICO (18 U.S.C. § 1962(c))

a) Racketeering Conduct – Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3) and was employed by or associated with the "Family Court Enterprise" described herein. Defendants knowingly conducted and participated, directly and indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

b) Enterprise Existence and Association – The Family Court Enterprise is an "association-in-fact" within the meaning of 18 U.S.C. § 1961(4), composed of the named Defendants, through the Enterprise and others known and unknown, functioning as a continuing unit with a shared purpose to retaliate against Plaintiff, deprive her of parental rights, obstruct justice, and unjustly enrich or protect themselves. It engaged in and affected interstate and international commerce.

c) Pattern of Racketeering Activity – Between approximately 2019 and the present, Defendants, through the Enterprise committed or aided and abetted at least two predicate acts of racketeering activity within ten years, including but not limited to:

    i. Mail fraud (18 U.S.C. § 1341)

    ii. Wire fraud (18 U.S.C. § 1343)

    iii. Bankruptcy fraud (18 U.S.C. § 152)

    iv. Obstruction of justice (18 U.S.C. § 1503)

     v.     Tampering with evidence (18 U.S.C. § 1519)

     vi.     Witness tampering and retaliation (18 U.S.C. §§ 1512, 1513)

     vii.     Money laundering (18 U.S.C. §§ 1956, 1957)

     viii.     Custodial interference (K.S.A. 21-5409)

     ix.     ADA retaliation (42 U.S.C. § 12203)

d) Defendant Participation (Representative Examples) –

     i.     Jonathan Lawson – Engineered identity theft on D.L.'s birth certificate, secured fraudulent PPP loans, concealed assets in bankruptcy, interfered with custody, and coordinated with others to perpetuate fraud and retaliation.

     ii.     BreAnne Poe – Filed fraudulent and retaliatory motions, engaged in ex parte procedural manipulation, and furthered wire/mail fraud by false pretenses.

     iii.     Andrew Bolton – As GAL, engaged in witness intimidation, concealed abuse, withheld reports, and communicated ex parte with judicial actors.

     iv.     Andrea Dunseth and other therapists – Failed to report known abuse, falsified treatment narratives, and provided clinical cover for the Enterprise's goals.

     v.     Judge Bryant – Suppressed ADA subpoenas, ignored protective motions, issued retaliatory sanctions while named in related litigation.

e) Distinctness – The Family Court Enterprise is distinct from the Defendants as "persons" under § 1961(3). Defendants operated through the Enterprise, utilizing courts, agencies, and entities separate from their ordinary affairs.

f) Injury – Plaintiff has suffered injury to business and property, including loss of child support, maintenance, litigation costs, and other economic harms, in an amount to be proven at trial. These injuries are the direct, substantial, and foreseeable result of the predicate acts

g) Damages and Relief – Pursuant to 18 U.S.C. § 1964(c), Plaintiff seeks treble damages, costs, and attorney's fees, and equitable relief under § 1964(a) to dismantle the Enterprise's influence over D.L. and prevent further injury.

126. Count II – Civil RICO Conspiracy (18 U.S.C. § 1962(d))

a) Agreement to Violate RICO – Beginning as early as 2019, Defendants, through the Enterprise knowingly conspired to violate 18 U.S.C. § 1962(c), agreeing that a member of the conspiracy would conduct the Enterprise's affairs through a pattern of racketeering activity.

b) Knowledge and Intent – Defendants, through the Enterprise had a meeting of the minds to harm Plaintiff and benefit themselves via unlawful acts, including fraud, obstruction, and intimidation. Parallel conduct, coordinated filings, ex parte actions, and aligned decisions demonstrate this agreement.

c) Overt Acts – While overt acts are not required, Plaintiff has alleged numerous predicate acts and specific coordinated events, such as ex parte custody transfers, fraudulent filings, and coordinated suppression of ADA rights.

d)  Conspiracy Liability – Each Defendants, through the Enterprise is jointly and severally liable for all damages caused by the conspiracy, regardless of direct participation in every predicate act.

e)  Injury – Plaintiff's injuries were the direct and foreseeable result of the conspiracy's success in concealing and perpetuating the racketeering scheme.

f)  Relief – Plaintiff seeks treble damages, costs, and attorney's fees under § 1964(c) and injunctive relief under § 1964(a) to prevent ongoing harm.

127. Count III – Violation of 42 U.S.C. § 1983 (Due Process, Equal Protection, First Amendment Retaliation)

a)  Defendants, through the Enterprise acting under color of state law deprived Plaintiff of her rights to due process, equal protection, and freedom from retaliation for protected petitioning activity.

b)  Defendants, through the Enterprise acts included suppression of filings, denial of hearings, biased adjudication, and retaliation for ADA requests.

c)  Plaintiff suffered loss of parental rights, reputational harm, economic injury, and emotional distress.

d)  Plaintiff seeks compensatory and punitive damages, and attorney's fees under 42 U.S.C. § 1988.

128. Count IV – Violation of Title II of the ADA (42 U.S.C. §§ 12131–12134;

Retaliation under § 12203)

    a)  Defendants are public entities and/or persons acting under color of state law
within the meaning of Title II of the ADA.

    b)  Defendants, through the Enterprise denied Plaintiff the benefits of services,
programs, or activities of a public entity by reason of disability and retaliated
against her for asserting ADA rights.

    c)  Plaintiff seeks declaratory, injunctive, and monetary relief, plus attorney's fees
under 42 U.S.C. § 12205.

129. Count V – State Law Claims

    a)  Defendants, through the Enterprise committed violations of Kansas law, including
interference with parental custody (K.S.A. 21-5409), identity theft and fraudulent
use of public records (K.S.A. 21-6107), child endangerment (K.S.A. 21-5601),
and civil conspiracy.

    b)  Plaintiff seeks damages, injunctive relief, and all remedies available under Kansas
law.

## JURY DEMAND

130. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a

trial by jury on all issues so triable.

PRESERVATION OF RIGHTS

131. Plaintiff respectfully invokes Fed. R. Civ. P. 56(d) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to request that no dispositive motion—including any motion under Rule 12(b)(6) or Rule 56—be granted prior to Plaintiff receiving a full and fair opportunity to conduct discovery. In RICO litigation, essential proof of the "enterprise," the pattern of racketeering activity, and the scope of injury is typically within the exclusive control of Defendants, co-conspirators, and third parties. Premature adjudication without access to such evidence would deprive Plaintiff of due process and the ability to support her claims with the factual record. See *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (reversing dismissal granted before discovery could proceed); see also *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (dismissal before discovery may prematurely terminate meritorious claims).

132. Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff reserves the right to amend this Complaint to substitute Doe defendants, add co-conspirators, and incorporate new evidence revealed during discovery or obtained through third-party subpoenas.

133. Appearing pro se and under active ADA retaliation, Plaintiff further reserves all procedural rights under Rules 15(a)(2), 26(c), 37(b), and 56(d) to:

    a)   Preserve full access to relevant discovery;

    b)   Prevent retaliatory suppression or alteration of material facts; and

    c)   Ensure due process in developing the evidentiary record.

134. Plaintiff also asserts the following procedural safeguards:

a) Rule 60(b)(3) – In the event Defendants obtain judgment through fraud, misrepresentation, or concealment of material evidence, Plaintiff reserves the right to seek relief from such judgment for misconduct.

b) Rule 12(i) – Should any Defendant file a motion to dismiss under Rule 12(b)(6), Plaintiff requests that the Court defer ruling until sufficient discovery has been permitted under Rule 56(d) to uncover facts necessary to oppose dismissal.

c) Rule 16(c)(2)(F) – Plaintiff requests that the Court monitor all parties for bad-faith litigation tactics, including refusal to participate in discovery, retaliation against witnesses, or suppression of records, and be prepared to issue sanctions, discovery orders, or protective orders as warranted.

135. Accordingly, Plaintiff respectfully requests that the Court deny or defer any dispositive motion until discovery has meaningfully commenced, all parties have complied with their disclosure obligations, and Plaintiff has had a reasonable opportunity to obtain evidence supporting her Civil RICO claims. Plaintiff also reserves the right to submit Rule 56(d) declarations identifying specific categories of evidence required to oppose any motion for summary judgment.

SPOLIATION AND ESI SUPPRESSION UNDER FED. R. CIV. P. 37(e)

136. Plaintiff issued a formal litigation hold and preservation notice on June 26, 2025, to more than a dozen court officials, judicial clerks, ADA coordinators, and state agency personnel. This notice cited 28 U.S.C. § 1446(d), 42 U.S.C. §§ 12203, 1983, and Fed. R. Civ. P. 37(b)–(e), and explicitly demanded preservation of electronically stored

information (ESI) related to ADA accommodations, transcript access, docket management, and communications surrounding suppression of Plaintiff's rights.

137. Despite receiving this notice, no recipient acknowledged, responded, or produced the requested materials. Court actors continued to block Plaintiff's access, refused to provide orders or filings relevant to federal proceedings, withheld CART captioning records, and failed to provide file-stamped copies of critical motions, including the order to withdraw the GAL and BreAnne Poe's motion to change supervised visitation payment to punish Plaintiff for seeking enforcement of rights.

138. Under Fed. R. Civ. P. 37(e), Plaintiff asserts that Defendants:

a) Had a duty to preserve electronically stored information and records;

b) Failed to take reasonable steps to preserve or produce this evidence;

c) Acted with the intent to deprive Plaintiff of the use of this information in this litigation; and

d) Caused prejudice to Plaintiff's ability to litigate and prove essential elements of ADA retaliation, due process obstruction, and enterprise coordination.

139. Because the missing ESI includes communications and records that would have shown coordination among enterprise actors, ADA accommodation denials, and suppression of filings, Plaintiff's ability to prove motive, participation, and continuity under RICO is severely impaired.

140. Plaintiff seeks relief under Rule 37(e)(2), including:

a) Adverse inferences that the lost information was unfavorable to Defendants;

b) Monetary sanctions sufficient to deter future misconduct; and

c) Formal referral to federal law enforcement for investigation of intentional destruction of civil rights-related records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Angeliina Lawson respectfully requests that this Court enter judgment in her favor and against all Defendants, jointly and severally, and grant the following relief:

141. Declaratory Relief

a) Declare that Defendants have violated the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962(c) and (d)).

b) Declare that Defendants have violated Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131–12134; § 12203), 42 U.S.C. § 1983, and applicable Kansas law.

c) Declare that orders and judgments procured in the underlying custody case by fraud and without due process are the product of racketeering activity and are void or voidable (without purporting to vacate state orders directly under *Rooker-Feldman*).

d) Declare that the identified acts constitute fraud upon the court, obstruction of justice, and predicate acts under the RICO statute.

142. Injunctive Relief

a) Prohibit ongoing racketeering and retaliation — Enjoin Defendants from further isolating D.L. from Plaintiff, from interfering with Plaintiff's lawful parental rights, and from engaging in any retaliation, harassment, or intimidation toward Plaintiff, D.L., or witnesses.

b) Remove enterprise influence — Bar Andrew Bolton from any role as Guardian ad Litem or other capacity in Plaintiff's family court matter; prohibit communications about Plaintiff or D.L. among Bolton, Jonathan Lawson, BreAnne Poe, judicial officials, court staff, and state officials.

c) Protective measures under Fed. R. Civ. P. 26(c) — Prohibit retaliatory litigation tactics (including vexatious motions, frivolous PFAs, or attempts to sanction Plaintiff for filing this suit) and the dissemination of false allegations regarding Plaintiff's mental health or character.

d) Access to information and records — Order Defendants to provide Plaintiff with immediate, complete access to all previously withheld records related to D.L.'s education, medical care, therapy, GAL activities, and state proceedings; produce all audio/video recordings, Teams/Zoom meeting logs, and transcripts at Defendants' expense.

e) No-contact and preservation — Prohibit Defendants and their agents from contacting Plaintiff or D.L. outside of permitted legal proceedings; order preservation of all potentially relevant evidence.

f) Rule 56(d) safeguard — Ensure no dispositive motion is ruled upon before Plaintiff has had a full and fair opportunity to conduct discovery.

g) Sanctions for ignoring discovery — Pursuant to Fed. R. Civ. P. 37(b)–(e), impose sanctions for any failure to respond to discovery, including adverse inferences, cost reimbursement, and referral to federal authorities.

h) Prohibit interference in state proceedings — Enjoin Defendants from initiating or influencing adverse actions against Plaintiff in the state custody case while this RICO action is pending.

143. Monetary Relief

a) Award Plaintiff compensatory damages in an amount to be determined at trial, but not less than $7,370,000, for financial losses caused by racketeering acts and conspiracy.

b) Award treble damages under 18 U.S.C. § 1964(c), totaling not less than $22,110,000, subject to proof at trial.

c) Award reasonable attorney's fees and costs under 18 U.S.C. § 1964(c) and 42 U.S.C. § 1988, including fees for expert witnesses and forensic accounting.

d) Award pre- and post-judgment interest as allowed by law.

144. Equitable / Other Relief

a) DOJ referral — Pursuant to 18 U.S.C. § 1964(d), direct the Clerk of Court to transmit a certified copy of the final judgment, findings of fact, and conclusions of law to the United States Attorney General and the Criminal Division of the U.S. Department of Justice for purposes of potential criminal prosecution, with findings to have collateral estoppel effect in subsequent proceedings. For criminal

investigation and potential indictment under §§ 1962, 1341, 1343, 1503, 1512, 1513, 1519, 1956, and 1957".

b) Restitution / disgorgement — Order Defendants to disgorge ill-gotten gains, benefits, income, profits, and proceeds including GAL, therapist, and attorney fees obtained through racketeering, and deposit such funds into a constructive trust for D.L. or as otherwise directed by the Court.

c) Restoration of Parental Rights (Non-RICO Relief) – In connection with Plaintiff's ADA and § 1983 claims, order appropriate federal protective measures to restore Plaintiff's custodial and parental rights with respect to D.L., and enjoin further deprivation of such rights in retaliation for protected activity.

d) Protective order for minor — Appoint an independent ADA advocate this action to safeguard D.L.'s interests and a CASA worker.

e) Tax all reimbursable litigation costs against Defendants.

f) Require Defendants to advance reasonable attorney's fees, forensic accounting costs, and litigation expenses into an escrow account under the Court's supervision to ensure fair access to representation.

145. Spoliation Sanctions

Enter findings under Fed. R. Civ. P. 37(e)(2) that Defendants spoliated material ESI after receipt of Plaintiff's litigation hold, and impose adverse inference instructions, evidentiary sanctions, and monetary penalties.

146. Catch-All Relief

Grant any such other and further relief as the Court deems just and proper to fully remedy the wrongs done to Plaintiff and protect the rights of Plaintiff and her son going forward.

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

1914 5th Ave., Leavenworth, KS 66048

AngeliinaCourtRecords@gmail.com | (913) 972-1661

CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August 2025, a true and correct copy of the foregoing Verified Civil RICO Complaint for Damages and Injunctive Relief, along with the summons, will be served by the Clerk of the Court via the ECF system and by certified mail, return receipt requested, upon all named Defendants at their last known addresses, in accordance with Fed. R. Civ. P. 4 and the Local Rules of the United States District Court for the District of Kansas through US Marshalls office.

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson