No. _____

In the United States Court of Appeals

For the Tenth Circuit

In re: Angeliina L. Lawson, | Petition for Writ of Mandamus

Petitioner. | (Emergency Relief Requested)

|

| Case below: Lawson v. Godderz et al.,

| No. 6:25-cv-01179-JWB-TJJ (D. Kan.)


PETITION FOR A WRIT OF MANDAMUS

(Emergency Petition to Compel Issuance of Summons and for Reassignment to

Three-Judge Panel of Out-of-District Judges)

Petitioner Angeliina L. Lawson, proceeding pro se, respectfully petitions this Court

for a writ of mandamus directing the United States District Court for the District of

Kansas to (1) immediately issue summons and permit service of the complaint in

Case No. 6:25-cv-01179-JWB-TJJ, and (2) reassign that case to a three-judge panel

of judges from outside the District of Kansas pursuant to 28 U.S.C. §§ 292(b), 294,

and 455(a), due to pervasive conflicts of interest, apparent judicial retaliation, and

obstruction in the handling of the case. In support of this Petition, Petitioner states as follows:

## JURISDICTIONAL BASIS AND INTRODUCTION

This Court's jurisdiction is invoked under the All Writs Act, 28 U.S.C. § 1651(a). Petitioner seeks an extraordinary writ commanding the District of Kansas to perform clear, nondiscretionary duties owed to Petitioner—namely, to issue the summons for a filed complaint and to administer justice before an impartial tribunal. Mandamus relief is warranted because Petitioner has no other adequate means to obtain the relief sought, her right to issuance of the writ is "clear and indisputable," and the writ is appropriate under the circumstances[1]. Petitioner's underlying action is a civil RICO and civil rights case raising grave allegations of systemic misconduct (including ADA retaliation and child endangerment) by Kansas judicial officers and others. Yet, through a series of irregular procedural maneuvers, the district court has effectively stalled the case at its inception – staying service of process after granting in forma pauperis status, refusing to rule on motions for reassignment to neutral judges, and denying urgent evidence-preservation relief – in a manner that mirrors the very misconduct alleged in Petitioner's complaint. The result is an intolerable *Catch-22*: Petitioner's case cannot proceed because summons have not issued, and the court refuses to issue summons or to transfer the case to an unbiased panel. Critical evidence is already

being lost or spoliated in the interim[2]. Only this Court's intervention can break the deadlock, protect Petitioner's rights, and ensure the case is heard by a tribunal free from the taint of conflict and bias.

## ISSUES PRESENTED

1. Whether the district court has a clear duty to promptly issue summons and permit service once in forma pauperis status is granted, and whether its failure to do so – effectively staying the case without justification – warrants mandamus relief under Fed. R. Civ. P 4[c](3) and the Due Process Clause.

2. Whether the assignment of Petitioner's case to judges within the District of Kansas who have prior involvement with Petitioner's related matters (and professional connections to defendants) violates 28 U.S.C. § 455(a)'s mandate of impartiality, such that reassignment to a neutral, out-of-district three-judge panel is required to ensure a fair proceeding under 28 U.S.C §§ 292(b) and 294.

3. Whether the district court's refusal to rule on Petitioner's motions for an out-of-district judge panel, coupled with procedural actions replicating the alleged obstruction described in Petitioner's RICO complaint, gives rise to a structural appearance of bias and retaliatory obstruction, warranting supervisory intervention.

4.  Whether extraordinary relief is necessary to prevent ongoing spoliation of evidence, obstruction or ADA protected rights, and continued denial of court access, where the district court has paralyzed the case procedurally and ignored all preservation and jurisdictional objections.

5.  Whether the Tenth Circuit should assert supervisory constitutional jurisdiction and reassign this matter to a lawful Article III judicial forum where the Petitioner has demonstrated a collapse of state remedies, structural conflict in the District of Kansas, and ongoing irreparable harm from void orders issued without jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

A. The Underlying Case and Initial Filings (August 2025). Petitioner Lawson filed the underlying action on August 15, 2025 in the U.S. District Court for the District of Kansas (Wichita Division), alleging a far-reaching civil RICO conspiracy (18 U.S.C. §§ 1961–1968) and related civil-rights violations. The Verified Complaint names 18 defendants – including several Kansas state judges, court clerks, and officials – and details a pattern of racketeering activity, ADA retaliation, and systemic due process violations spanning multiple counties and years. Given the nature of the parties and allegations, Petitioner simultaneously filed a Motion for Out-of-District Judge and Complex Case Designation (Doc. 4) on August 15,

2025, expressly requesting that the case be assigned to a three-judge panel of out-of-district judges due to inherent conflicts of interest[3][4]. Petitioner noted that many defendants are sitting Kansas judicial officers and staff, creating potential institutional bias if in-district judges were to preside[5][6]. She also noted the case's complexity (multiple parties, dozens of predicate acts, overlapping state and federal issues) and requested it be internally coded as a "COMPLEX, MULTI, 3JUDGE, TRANSFER" case to trigger appropriate assignment protocols[4][7].

Concurrently, Petitioner applied to proceed in forma pauperis ("IFP") (Doc. 3) due to her indigence, and filed an Emergency Motion to Compel Immediate Production and Preservation of Records (Doc. 5) on August 15, 2025. This emergency motion detailed immediate risks of evidence destruction: Petitioner had served a litigation hold notice on June 26, 2025 to over a dozen officials (including court clerks and ADA coordinators) directing preservation of all relevant records[8]. Despite this, Petitioner provided evidence that certain defendants were already *withholding or altering records* central to her claims – for example, suppression of filed motions and refusal to provide file-stamped copies of critical pleadings. The motion documented that spoliation had "already begun," with "missing, altered, or withheld" materials identified (as later catalogued in the Complaint at ¶¶ 136–140)[2]. Given the ongoing irreparable harm from evidence loss, Petitioner sought an order compelling defendants to immediately preserve and produce key records

(such as ADA accommodation logs, emails, transcript access records, docketing communications, etc.) and to forensically image relevant electronic data.

Upon filing, the case was initially assigned to Chief District Judge Eric F. Melgren and Magistrate Judge Angel D. Mitchell (D. Kan.) by the clerk's office. No summons issued with the complaint on August 15, 2025[9], presumably pending the court's ruling on the IFP application.

B. Reassignment to Judges Involved in Petitioner's Other Cases, Contrary to Reassignment Requests. On August 19, 2025, before any action was taken on the IFP or emergency motion, the Chief Judge sua sponte reassigned the case to District Judge John W. Broomes (D. Kan.)[10]. Judge Broomes is the very judge already presiding over several of Petitioner's other federal cases against related defendants, including cases Nos. 2:25-cv-02199, 2:25-cv-02171, 2:25-cv-02251, and 5:25-cv-04045[11] / 25-3097. In those matters – which involve overlapping allegations of judicial misconduct, denial of ADA rights, and child safety issues – Petitioner has encountered *premature dismissals, stays, and refusals to allow proceedings to reach a jury*, and at least one case is on appeal (10th Cir. No. 25-3097) due to a premature dismissal prior to service[11]. The reassignment of the new RICO case to Judge Broomes thus immediately raised serious concerns of partiality, placing the case under the authority of a jurist already entangled with the same defendants and issues[12][13]. Moreover, on that same date (Aug. 19), an

internal text-only Minute Order (Doc. 9) reassigned the referral magistrate from Judge Mitchell to Magistrate Judge Teresa J. James – despite Petitioner's prior express request to avoid any magistrate or judge who had overseen her past matters[14][15]. Magistrate Judge James had indeed been involved in Petitioner's earlier cases, issuing Reports & Recommendations or orders that resulted in dismissals or stays adverse to Petitioner[16][17]. In short, by August 19, the case had been placed in the hands of the very judicial officers whose neutrality Petitioner had reason to doubt and sought to circumvent via her motion for out-of-district judges.

Petitioner reacted promptly. On August 19, 2025, upon learning of the assignments, she filed a Renewed Motion for Assignment to Three-Judge Out-of-District Panel (Doc. 7). This Renewed Motion reiterated the grounds of her original request and updated the record to reflect the recent reassignments. Petitioner emphasized that her initial motion (Doc. 4) for an out-of-district panel remained unheard and that the court's reassignment to Judge Broomes – "a judge directly connected to Plaintiff's ongoing litigation with the same defendants" – only heightened the appearance of bias[18]. She argued that no judge within the District of Kansas could impartially preside over a case that effectively puts Kansas's own judicial actors on trial[19], and she invoked the Chief Circuit Judge's statutory authority under 28 U.S.C. § 292(b) to assign an outside judge, as

well as 28 U.S.C. § 294 to designate a senior judge from another district as part of a special panel[20]. Petitioner also specified that judges with demonstrated civil RICO experience would be preferable for efficient management of this complex case[21]. In a separate motion, Petitioner moved to vacate the Magistrate reassignment and recuse Judge James, citing 28 U.S.C. §§ 144 and 455, on grounds that Judge James's prior involvement in related cases created at least an *appearance of bias* if not actual bias[14][15]. Petitioner underscored that the August 19 magistrate reassignment was executed without explanation and in disregard of her plea for a "neutral magistrate"[22].

C. The District Court's Failure to Address the Recusal/Reassignment Motions. To date, the district court has never substantively ruled on Petitioner's original Motion for an Out-of-District Judge (Doc. 4). That motion – raising a fundamental question of the trial court's impartiality – has been met with silence, not a formal ruling[23]. Instead, the court seemingly treated Petitioner's renewed motion (Doc. 7) as a generic "recusal" request and denied it without hearing. On or about August 21, 2025, Judge Broomes denied Petitioner's Renewed Motion for a Three-Judge Panel, keeping the case under the same judicial officers. In doing so, the court *implicitly collapsed* the unaddressed contentions of Doc. 4 into that summary denial, without ever grappling with the specific statutory mechanism Petitioner invoked (i.e. designation of outside judges by the Circuit). Petitioner submits that

the court's refusal to acknowledge or directly decide the request for out-of-district judges is a grave failure of its constitutional obligation to ensure an impartial forum[23]. A motion of such import – aimed at preserving public confidence in judicial neutrality – cannot be brushed aside or treated as nonexistent. Yet here, the record reflects that "[t]hat motion remains unresolved"[23], and the court proceeded as if no special assignment was ever sought.

Compounding this, the manner in which the court sequenced its rulings is itself indicative of bias. By August 21, 2025, before addressing Petitioner's IFP application (Doc. 3) or her original recusal motion (Doc. 4), Judge Broomes turned first to denying Petitioner's renewed reassignment motion. In other words, the court's *first* substantive act in this case was to entrench its own control over the matter, rather than to enable the case to proceed. This inversion of the typical order of decision-making (where IFP status and initial procedural matters should precede merits decisions) did not go unnoticed. Petitioner filed a Rule 59(e) Motion on August 21, 2025 drawing attention to the court's departure from orderly process:

*"On August 15, Plaintiff filed: (1) IFP; (2) Motion for Out-of-District Judge; (3) Emergency Motion to Compel Preservation. The Court's first duty was to address IFP… Instead, the presiding judge leapt over Doc. 3 and Doc. 4, and directed his attention first to Doc. 7 – Plaintiff's renewed motion for reassignment"*[24][25].

Such *"inversion of order"* betrays a defensive posture by the court – a "judicial reaction" rather than neutral adjudication[25].

D. Stay of Summons and Denial of Evidence Preservation – "Paralysis" of the Case. On the same date that Judge Broomes denied reassignment (around Aug. 21, 2025), Magistrate Judge James granted Petitioner's IFP motion in form, but immediately stayed issuance of summons in substance. In a text Order (Doc. 13), the magistrate allowed the case to proceed *in forma pauperis* yet directed the Clerk not to issue summons or serve defendants "until further order of the court." In the very next Order (Doc. 14), Magistrate James denied Petitioner's Emergency Motion to Preserve Evidence (Doc. 5) as "premature" on the ground that no defendants had yet been served. The combined effect of these orders was to place Petitioner in an untenable "vicious circle": *she may not obtain discovery or preservation because no summons have been issued, and summons will not issue because the Court has unilaterally withheld them*[26]. As Petitioner's Rule 59(e) motion aptly observed, *"Thus the Plaintiff was told: you may not obtain discovery because summons have not issued, and summons will not issue because we have withheld them"*[26]. This procedural paralysis effectively freezes Petitioner's lawsuit at ground zero. It is difficult to conceive of a more prejudicial one-two punch to a civil plaintiff's ability to litigate her case: the court has *simultaneously* forbidden Petitioner from initiating discovery or enforcing evidence preservation

and forbidden her from formally starting the action against defendants via service of process.

Notably, the magistrate's stay of service is highly unusual. Petitioner is not a prisoner and her Complaint, running over 200 pages with detailed exhibits, raises serious claims of public importance. She paid the filing fee via granted IFP status. Under ordinary practice, once IFP is granted, the Clerk (or U.S. Marshals, in IFP cases) should issue and serve summons on the defendants, unless there is a legal reason (such as a statutory screening dismissal under 28 U.S.C. § 1915(e)(2)) to hold off. Here, no such dismissal or screening order has been entered; no finding of frivolousness or failure to state a claim has been made. Yet the court administratively stayed service indefinitely, without explanation or deadline. Petitioner contends that this stay is ultra vires and deprives her of her right to proceed. Indeed, the effect is to impose a *de facto* "secret" initial review of the merits outside of any normal procedure or schedule – all while the clock ticks and evidence disappears. Petitioner submits that if the court had doubts about the sufficiency of the Complaint, it was obliged to address them promptly under Rule 12 or § 1915, not to hold the case hostage by refusing to allow it to even begin.

Meanwhile, evidence has indeed been spoliated during this court-imposed delay. As documented in Petitioner's Emergency Motion and Verified Complaint, several

defendants (including court clerks and state officials) have engaged in practices such as *withholding records, manipulating dockets, and destroying or altering communications* in related proceedings. For example, Kansas judicial staff failed to file or re-characterized Petitioner's crucial submissions (like an ADA grievance labeled as mere "correspondence"), and a clerk named as a defendant (Tina Miller) withheld mailing of orders and physically kept filings off the record – acts which Petitioner pleads as predicate acts of mail fraud and obstruction of justice. Petitioner's litigation hold notice of June 26, 2025 put these actors on clear notice to preserve all such evidence[27]. Yet, since the filing of this federal action, Defendants have not cooperated with preservation. Petitioner's motion cites that Defendants have *"failed to acknowledge the preservation demand, withheld responsive records, continued to suppress access to filed motions and orders, and obstructed Plaintiff's ability to obtain file-stamped copies of pleadings."*. In short, spoliation is ongoing, and the district court's response has been to deny relief on procedural grounds of its own making. Petitioner has no subpoena power or discovery tools to further stem the destruction, because the court will not allow the case to advance to the service stage.

E. Pattern of Retaliation and Unequal Treatment. The backdrop to these events is Petitioner's broader struggle to have her claims heard in a fair forum. Prior to initiating this RICO suit, Petitioner has filed multiple actions and complaints (both

state and federal) alleging misconduct by Kansas officials, including ADA
discrimination and retaliatory removal of her parental rights. These efforts have
been met with significant institutional resistance. The instant case itself alleges that
Kansas judicial actors conspired to obstruct her access to courts and to cover up
misconduct – for instance, by *"skipping poverty affidavits, suppressing motions,
and dismissing [cases] while jurisdictional prerequisites remained unresolved,"* as
was allegedly done by a state judge (Hon. John Bryant) during Petitioner's civil
proceedings. Troublingly, the district court's handling of Petitioner's federal cases
now appears to replicate that very pattern. In her Rule 59(e) motion, Petitioner
pointed out that *"the sequence of rulings mirrors the misconduct alleged against
Judge ... Bryant in Plaintiff's RICO Complaint"* – in other words, the federal court
is now *"replicating that same pattern"* of procedural trickery and obstruction. By
*"skipping"* her IFP poverty affidavit initially, *suppressing or ignoring* her motions
(e.g. leaving the out-of-district judge motion unaddressed), and *stalling
proceedings without resolving prerequisites*, the presiding judge has effectively
"entwined himself with the factual predicates of the Complaint." Petitioner
contends that no court can impartially adjudicate a case while simultaneously
engaging in the very conduct at issue; *"[n]o tribunal may fairly sit in judgment of
its own alleged misconduct."* (citing Caperton v. A.T. Massey Coal Co., 556 U.S.
868 (2009) and In re Murchison, 349 U.S. 133 (1955)). The appearance is that of a

self-validating cycle of retaliation: because Petitioner has accused Kansas judicial personnel of bad faith and obstruction, the assigned judges (as colleagues of those accused, or as prior targets of Petitioner's criticism) are now *themselves* acting in a manner adverse to Petitioner, thereby reinforcing her claims and compounding the conflict.

Petitioner has likewise sought relief in the Kansas Supreme Court through a pending Emergency Supplemental Motion to Vacate Void Custody Orders for Lack of Subject Matter Jurisdiction (App. Case No. 129285, filed Aug. 5, 2025), and a Notice of Judicial Inaction and Continuing Irreparable Harm (filed Sept. 3, 2025). No ruling or acknowledgment has been entered. This inaction leaves Petitioner and her child with a disability is trapped under void custody orders, underscoring the collapse of state judicial remedies. [Exhibit C][14].

For example, Petitioner's persistent efforts to obtain ADA accommodations and to expose court misconduct in Kansas have apparently engendered hostility. She has even lodged an ADA complaint with the DOJ's Office for Civil Rights (No. 2020-OCR-0363) regarding the denial of accommodations by state judges. In communications with DOJ, Petitioner described the "active, retaliatory suppression of ADA enforcement" she faced, including coordinated efforts by state entities to monitor and stifle her litigation[28][29]. It is against this backdrop that Petitioner fears the district court's inaction and adverse procedural rulings are not mere

happenstance, but retaliatory or defensive measures aimed at protecting institutional actors. Indeed, the Chief Judge of the District initially took the case, only to promptly hand it to Judge Broomes – who had a track record of dismissing or delaying Petitioner's suits – rather than even consider bringing in an outside judge. And when Petitioner pointed out the conflict, the court's priority was to reject that contention rather than ensure fairness.

Finally, Petitioner notes an alarming disparity in how her case has been treated compared to at least one similarly situated case. On information and belief, another civil RICO case filed by a pro se litigant in Eastern Missouri Eighth Circuit Courts on the very same day as Petitioner's complaint was filed (August 15, 2025) in the District of Kansas received prompt attention: the court in that case quickly set a hearing and even subjected the pro se plaintiff to questioning on the record. By contrast, Petitioner – with a case of equal if not greater public importance – has been afforded no hearing, no opportunity to be heard in person, and in fact cannot even initiate the adversarial process due to the stayed summons. This suggests that Petitioner's case is being singled out for anomalously dilatory treatment, raising further concern that improper factors (such as the identity of the defendants or Petitioner's status as a critic of the Kansas judiciary) are influencing the management of her case.

In sum, the factual record before this Court is one of a district court that has abdicated its duty to proceed impartially and expeditiously. Every relevant procedural decision thus far – assignment, recusal, service, discovery – has been resolved to Petitioner's detriment without a valid legal basis, leaving her case effectively frozen and her rights in limbo. Petitioner has exhausted every reasonable avenue in the district court: she moved for recusals, moved for preservation orders, filed motions to reconsider the process – all to no avail. The district court has either ignored these requests or disposed of them in a perfunctory manner that exacerbates the prejudice. Therefore, Petitioner turns to this Court for extraordinary relief to set the case on the proper course.

## LEGAL STANDARD FOR MANDAMUS

A writ of mandamus is an extraordinary remedy, reserved for situations where the petitioner has a "clear and indisputable" right to relief and no other adequate means to attain that relief, such that the issuing court is satisfied that the writ is appropriate under the circumstances[1]; *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004); In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1186–87 (10th Cir. 2009). Three conditions must be met: "(1) the party has no other adequate remedy; (2) the party's right to the writ is clear and indisputable; and (3) the issuing court, in the exercise of its discretion, is satisfied that the writ is appropriate"[1]; *Cooper Tire*, 568 F.3d at 1187. Even when these prerequisites are

satisfied, the Court retains discretion to deny relief if, for example, the petition implicates sensitive matters or the petitioner unduly delayed. Mandamus, however, remains available to confine a lower court to the lawful exercise of its prescribed jurisdiction or to compel it to perform a duty required by law. *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988). The writ may issue to address clear abuses of discretion, usurpations of judicial authority, or persistent failures to act. *See* Fed. R. App. P. 21 (procedure for mandamus).

Importantly, "[m]andamus is a proper means to challenge a district court's unwarranted delay or refusal to act" when that inaction effectively deprives a litigant of her rights. *See* Will v. Calvert Fire Ins. Co., 437 U.S. 655, 661–62 (1978) (mandamus may issue if a court's refusal to proceed "'amounts to a failure to exercise jurisdiction'"); *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990) (recognizing mandamus to prompt a district court to act on pending matter). Additionally, where lower courts have demonstrated structural incapacity to provide a fair forum, the appellate court retains **inherent supervisory authority** under 28 U.S.C. § 1651 to assign neutral adjudicators and preserve constitutional access to a judicial forum. Likewise, mandamus can redress improper venue or judge assignments where pervasive bias or conflict of interest would taint the proceedings. *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987) (mandamus relief ordering recusal due to appearance of bias). The fundamental principle is that an

appellate court may step in via mandamus to prevent manifest injustice and to ensure the integrity of judicial proceedings when the usual processes – such as awaiting final judgment for appeal – would be inadequate to cure the harm.

Here, all the mandamus criteria are met. As explained below, Petitioner's entitlement to have summons issued and her case assigned to an impartial tribunal is not subject to reasonable dispute – it is a basic predicate of due process. Yet, absent this Court's intervention, there is no other avenue to secure these rights: the district court has effectively barricaded itself against the normal progress of the case and has shown no indication it will relent. Every day that passes without action in the district court further prejudices Petitioner's ability to prosecute her claims. An eventual appeal (if one could even be taken from a dismissal or other final order) would come too late to undo the ongoing evidentiary harm and the constitutional injury of being denied a neutral forum. Thus, if ever mandamus were justified to rescue a case from judicial paralysis and bias, it is this case.

ARGUMENT

I. Mandamus Should Issue to Compel the Immediate Issuance of Summons and Service of the Complaint, as the District Court Has a Clear Duty to Allow the Case to Proceed.

It is fundamental that once a complaint is filed and survives any initial review, the plaintiff has the right to have summons issued and served on the defendants so that the case may move forward. Fed. R. Civ. P. 4(c)(3) provides that when a plaintiff is authorized to proceed in forma pauperis, "the court may order that service be made by a United States marshal," and the plaintiff is entitled to rely on the officers of the court to effect service. The rule does not contemplate that a court, having granted IFP status, may then *withhold issuance of summons indefinitely* for no stated reason. By granting Petitioner's IFP motion on August 21, 2025 (Doc. 13), the district court acknowledged that Petitioner's case is properly commenced and that she is entitled to proceed without prepaying fees. That order triggered the clerk's obligation, under normal practice, to issue summonses for each defendant and arrange for service (through U.S. Marshals or other means). Yet the magistrate judge imposed a stay on summons that finds no support in any statute or rule. No provision of the in forma pauperis statute (28 U.S.C. § 1915) or the Federal Rules authorizes a blanket stay of service after IFP is granted – except that § 1915(e)(2) does require courts to dismiss an IFP case *"at any time"* if it is

frivolous, malicious, or fails to state a claim. If the district court believed Petitioner's complaint met those criteria, it was incumbent on the court to issue a prompt dismissal order under § 1915(e)(2). But the court did not dismiss the case (and rightly so, as the 280-paragraph RICO complaint is detailed and supported by exhibits). Instead, the court has left the case in a procedural purgatory – neither dismissed nor allowed to proceed. Such a maneuver is patently unfair and constitutes a clear abuse of discretion, if not a refusal to exercise jurisdiction warranting mandamus. *See* Will, 437 U.S. at 661–62.

The right to have summons issued in these circumstances is "clear and indisputable." Petitioner has fulfilled all preconditions for service: she filed a facially plausible complaint, complied with Rule 8 and pleading standards, and obtained IFP status (which stands in for fee payment). Under Rule 4(b), the Clerk "must" issue a summons, signed and sealed, "for each defendant," *upon presentation of a proper summons form*. Petitioner submitted the required summons forms for all defendants (as indicated in her certificate of service filings on August 19, 2025)[30]. Those summonses should have been issued. The magistrate judge's text directive to hold them is legally erroneous and has no precedent in the District's local rules or practice (Petitioner is aware of no local rule in D. Kan. authorizing a stay of service in non-prisoner cases absent a stay of the entire case). By compelling the district court to issue the summons now, this

Court would simply be enforcing a ministerial duty owed to Petitioner. Courts have recognized that mandamus is appropriate to compel purely ministerial acts that a lower court improperly refuses to perform. *See* In re Allred, 165 F. App'x 423, 424 (5th Cir. 2006) (mandamus to compel district court to authorize service under IFP when court erroneously failed to do so); Johnson, 917 F.2d at 1285 (mandamus to require ruling on pending matter).

The harm caused by the stay of service is not speculative or modest – it is severe and ongoing. As detailed, critical evidence is being lost. Witness recollections are fading and documents are being destroyed or hidden, as shown by Petitioner's uncontested evidence of defendants' non-compliance with preservation requests. Petitioner's underlying claims involve ongoing child endangerment and disability discrimination; each day of delay is a day her child remains in potentially harmful circumstances and a day her ADA rights are chilled. In effect, the district court's inaction is granting defendants all the relief they could want (delay, inability of Petitioner to prosecute) without defendants even appearing or asking for it. This flips the adversary system on its head and deprives Petitioner of her constitutional right to be heard and to seek redress.

It is no answer to say Petitioner can ultimately appeal a final dismissal. If, for instance, the district court continues to stall and eventually dismisses the case for failure to prosecute (a scenario Petitioner legitimately fears), Petitioner would

appeal after months or years of lost time – by then, the evidence of the conspiracy could be irretrievably gone and the relief she seeks (including injunctive relief for her child's safety) moot. The extraordinary situation here is that delay itself equals defeat. Mandamus is thus appropriate to prevent the lower court from "defeating…the right of a party by delay"[1].

In sum, Petitioner's right to have the summons issued is clear, the district court's withholding of summons is a clear abuse of authority, and no adequate alternative remedy exists. This Court should issue a writ of mandamus compelling the district court Clerk (or directing the district judge to order the Clerk) to immediately issue and serve summons upon all defendants in case 6:25-cv-01179.

II. Mandamus is Warranted to Correct the District Court's Failure to Recuse or Reassign in the Face of Pervasive Judicial Conflicts of Interest and Appearance of Bias, in Violation of 28 U.S.C. § 455(a).

A core principle of our justice system is that "[a]ny judge…shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In Petitioner's case, virtually *every* judge in the District of Kansas has a reasonable ground to have their impartiality questioned – given that Petitioner's RICO Complaint directly accuses Kansas judges, court staff, and even the "District Court of Kansas" itself in various contexts, of unlawful acts. The

named defendants include at least three Kansas state judges (Hon. Eric W.

Godderz, Hon. Taylor J. Wine, and Hon. John K. Bryant) as well as clerks (e.g.,

Tina Miller of the 4th Judicial District) and other court personnel. The allegations

involve these judicial actors engaging in fraud, obstruction, and civil rights

deprivations under color of law. Although the defendants are from the state

judiciary, not the federal judiciary, it is unrealistic to expect that federal judges

sitting in Kansas would not have professional or personal connections with their

state counterparts. The Kansas legal community is not large; many federal judges

were former state practitioners or have regular interaction with state judges through

judicial conferences, bar events, or simply by sharing the same courthouse locales

(particularly magistrate judges, who often coordinate with state officials on certain

administrative matters). At a *minimum*, the appearance of solidarity or institutional

comity between the federal bench and the state bench in Kansas creates a

reasonable question of partiality. Beyond appearance, there is concern of actual

bias: Petitioner has been an outspoken critic, filing judicial misconduct complaints

and ADA complaints implicating the judiciary. It is not unreasonable to fear that a

judge in the same district might have preconceived views about Petitioner's

contentions or might feel a subconscious impulse to defend their local judicial

system's reputation against RICO accusations.

Under these circumstances, Section 455(a) and due process required a fresh set of eyes on Petitioner's case – ideally from judges with no ties to Kansas. Rather than facilitate that, the District of Kansas did the opposite: it concentrated the case in the hands of a judge and magistrate who were already involved with Petitioner's disputes. Judge Broomes had prior exposure to Petitioner's allegations (having dismissed or managed her other lawsuits involving related facts), and Magistrate James had issued recommendations in related cases. This was precisely the scenario Petitioner sought to avoid by her motions. The district court's refusal to even consider bringing in an out-of-district judge, and its denial of Petitioner's reassignment motions, amount to a clear error in refusing recusal. *See* In re School Asbestos Litig., 977 F.2d 764, 775–76 (3d Cir. 1992) (mandamus granted ordering recusal where reasonable observer could question judge's impartiality).

The Tenth Circuit has recognized that mandamus is an appropriate vehicle to review a denied recusal motion in exceptional cases. *See* Nichols v. Alley, 71 F.3d 347, 350 (10th Cir. 1995) (granting mandamus and directing recusal under § 455(a); noting that mandamus is available to address "the anomalous situation of a district judge sitting in review of his own recusal decision"). This is such a case. Any doubt about the need for outside judges was resolved by the district court's conduct itself: as described, the court's procedural rulings have mimicked the alleged wrongdoing of the defendants, giving an objective observer ample reason

to suspect bias. This is not merely theoretical. In *Garrison v. City of Ottawa*, the U.S. Supreme Court remanded the case and ordered reassignment after finding that Judge Eric Godderz had demonstrated "prejudice against Garrison" and "bias in favor of represented parties." The Kansas Court of Appeals subsequently stayed proceedings in a related case, *Garrison v. Ward*, explicitly acknowledging "nonfeasance, prejudice, and bias" by Judge Godderz. These findings were issued after multiple recusal motions were improperly denied. Both judgments were declared void. These are not allegations — they are adjudicated findings by both the state appellate court and the highest court in the nation. The structural concerns raised by Petitioner in this action are not isolated; they mirror a documented pattern of judicial bias that has already warranted reversal and reassignment in other cases involving Judge Godderz [13]. The Supreme Court in Caperton held that due process can mandate recusal in extreme cases where the probability of bias is too high to be constitutionally tolerable, even if the judge is subjectively impartial. 556 U.S. at 877. Here, the pattern of adverse actions taken by Judge Broomes and Magistrate James – all unfavorable to Petitioner and beneficial to the accused judicial defendants – raises the specter of bias to an intolerable level. This is not a close question of marginal inconvenience or slight overlap; it strikes at the heart of Petitioner's ability to get a fair hearing. If the judges handling her case are effectively witnesses or participants in the controversy (by virtue of replicating the

alleged obstruction), then the structural integrity of the proceeding is broken. *In re Murchison*, 349 U.S. at 136 ("our system of law has always endeavored to prevent even the probability of unfairness").

Congress has provided a mechanism to solve such a problem: 28 U.S.C. § 292(b) authorizes the Chief Judge of the Circuit to designate a judge from outside the district to preside, whenever "the public interest so requires." Likewise, 28 U.S.C. § 294(d) allows for designation of willing senior judges from other circuits. These provisions exist to maintain public confidence in the judiciary in scenarios where local judges may all be compromised by association or interest. Petitioner's case is an archetype of when such an out-of-district assignment is warranted – indeed, it is hard to imagine a more "public interest" oriented use of § 292(b) than to ensure that claims of widespread judicial corruption are adjudicated by a tribunal beyond reproach.

Yet, when Petitioner explicitly invoked § 292(b) and § 294 in her motion[6][20], the district court gave no reason for declining to implement them. It offered no finding that local judges could be impartial; it simply denied the request as a matter of course. This failure to give meaningful consideration to the request for an out-of-district panel was itself legal error and an abuse of discretion. In Nichols, the Tenth Circuit emphasized that, in evaluating a § 455(a) recusal, the court must consider how the situation appears to the average person on the street. 71 F.3d at

350. Here, the average person would undoubtedly question the impartiality of Kansas judges adjudicating a case that accuses Kansas judges of racketeering. The district court's refusal to acknowledge that concern shows a rigid insistence on keeping the case "in-house" that undermines confidence in the outcome.

Accordingly, Petitioner's right to relief on this issue is clear. She is entitled, at the very least, to an unbiased judge or judges. Mandamus is appropriate to effectuate that right because there is no other way to cure the taint. On appeal from a final judgment (if one ever occurs), Petitioner could raise the recusal issue, but by then tremendous resources (hers and the judiciary's) would have been wasted on proceedings that were structurally unfair from the start. It is far more sensible and just for this Court to intervene now and direct that the case be reassigned as requested. In doing so, this Court would not be "picking a judge" for Petitioner's case, but rather instructing the proper official (Chief Judge of this Circuit) to utilize existing statutory authority to empanel neutral judges. Such relief is within this Court's mandamus power and is supported by precedent. *See* In re BellSouth Corp., 334 F.3d 941, 951 (11th Cir. 2003) (granting mandamus to reassign case to a different judge on remand in light of circumstances affecting appearance of justice).

III. The District Court's Procedural Conduct Constitutes a Clear Abuse of
Discretion and a Violation of Due Process, Justifying Mandamus to Vacate the
Tainted Orders and Ensure Future Proceedings Before a Neutral Panel.

Even apart from the specific issues of summons and recusal, the totality of the
district court's conduct in this case reflects a clear abuse of discretion and a
abdication of judicial duty that mandate correction via mandamus. This is not a
situation of routine trial management or a few harmless errors; rather, it is a
breakdown of the judicial process at the case's inception, in a manner that offends
basic notions of justice.

These facts are further substantiated by a Rule 60(b)(3) preservation filing in Case
No. 5:25-cv-04045 (Doc. 30), where Petitioner documented falsified hearing
transcripts, ADA accommodation denials, and docket tampering across
proceedings. That filing, entered on July 11, 2025, preserved federal fraud-on-the-
court claims and has been incorporated by reference in Petitioner's federal RICO
case and this Petition. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S.
238 (1944). [Exhibit D]

To recap the extraordinary irregularities:

- Refusal to Rule on Critical Motion: The court left Petitioner's motion for
  out-of-district judges (Doc. 4) hanging, neither granting nor formally

denying it[23]. By doing so, the court avoided creating a reviewable order and evaded accountability on the issue. This non-ruling is itself a constructive denial that is reviewable now on mandamus, because it concerns the composition of the court and affects the court's jurisdiction to proceed (Petitioner effectively challenged the judge's qualification to sit, which the judge ignored).

- Inversion of Order & "Judicial Reaction": The court departed from the normal adjudicative sequence by prioritizing its own retention of the case (denying reassignment) over threshold matters like IFP and summons[31]. Such a priority suggests the court acted out of self-interest or defensiveness – a hallmark of arbitrary action.

- Entrapment in Circular Ruling: The magistrate's pair of orders (Docs. 13 and 14) created a procedural trap that has no legitimate justification[26]. It is one thing to deny an early discovery motion because it is premature; it is another to simultaneously ensure it *stays* premature by halting service. The circularity here is evidence of bad faith or at least extreme mismanagement. As Petitioner wrote, *"This circularity is not procedure; it is paralysis."* The court offered no rationale for why service was stayed – no claim of wanting to screen for frivolousness, no claim of waiting for a related outcome,

nothing. In the absence of any articulated reason, one can only infer improper motives or an intent to delay for delay's sake.

- Pattern Mirroring Alleged Misconduct: The coincidence between the court's actions and the misconduct alleged against state judicial actors (e.g., ignoring IFP affidavits, suppressing motions, procedural "sleight of hand" to thwart rights) is deeply troubling. In Gutierrez v. Saenz, 606 U.S. ___, No. 23–7809 (June 26, 2025), the U.S. Supreme Court reaffirmed that "due process does not countenance procedural sleight of hand whereby a State extends a right with one hand and then takes it away with another." Yet that is exactly what happened here: the district court extended the right to proceed IFP (with one hand) and then nullified that right by withholding service and discovery (with the other). Such maneuvering is an affront to due process as understood in Gutierrez and related cases. It renders the formal grant of IFP hollow, just as a state in Gutierrez made a DNA testing right hollow by procedural tricks. The Fourteenth Amendment's due process guarantee (applicable to the states) and the Fifth Amendment's guarantee (applicable to federal courts) both condemn this kind of bait-and-switch. Thus, the magistrate's stay of service and denial of evidence preservation were not only abuses of discretion but *constitutional violations* in their own

right – depriving Petitioner of property (her chose in action and her statutory rights under § 1915) without due process of law.

Taken together, these factors show that the district court's actions have fallen "so far afield of established standards of judicial behavior as to demonstrate…usurpation of power." *See* Mallard v. U.S. Dist. Court, 490 U.S. 296, 309 (1989) (mandamus appropriate where trial court acts outside its powers). Mandamus is appropriate not just to compel discrete acts (like issuing summons or reassigning judges), but also to generally "vacate" improper orders and "reset" proceedings that have been fundamentally tainted. *Petitioner respectfully submits that this Court's writ should nullify* the offending orders – specifically, the Order staying service (Doc. 13) and the Order denying the emergency preservation motion (Doc. 14) – because those orders were issued in error and under a cloud of bias. Vacating them will restore the posture of the case to what it should have been: with IFP granted *without a stay* (meaning summons issue forthwith), and with Petitioner's preservation motion ripe for prompt, impartial consideration by a new panel (or mooted by defendants' compliance once they are served).

Additionally, any denial of Petitioner's reassignment/recusal motions by Judge Broomes should be vacated, as Judge Broomes had a personal stake (at least an implicit one) in that decision. It is axiomatic that no judge should rule on his own recusal; yet by denying the motion for out-of-district judges, Judge Broomes in

effect passed judgment on a matter in which his own involvement was challenged.

Mandamus can issue to correct that. *See* Nichols, 71 F.3d at 350.

IV. No Other Adequate Remedy Exists, and the Balance of Equities Strongly
Favors Immediate Mandamus Relief.

Finally, Petitioner emphasizes that she has exhausted remedies within the district

court and cannot obtain relief through ordinary appeal. The challenged actions are

interlocutory decisions (or non-decisions) that cannot be appealed as of right.

While in some instances a party can seek certification of an interlocutory appeal or

file a motion for reconsideration, neither is viable here. An interlocutory appeal

under 28 U.S.C. § 1292(b) would require the district court's cooperation, which is

highly unlikely given its indifference to Petitioner's plight thus far. A motion for

reconsideration was effectively filed (the Rule 59(e) motion, treating the

combination of orders as akin to a final order) – and even that motion highlighting

constitutional issues has not moved the court to action. Petitioner could

theoretically wait for a final judgment and appeal then, but as argued, that route is

neither adequate nor likely to vindicate her rights, due to irreversible prejudice by

delay.

Moreover, the injuries at stake transcend Petitioner's individual interests. There is

a compelling public interest in ensuring that claims of judicial corruption are

handled transparently and by an impartial tribunal. The *appearance of justice* is at risk. Every day that this case remains mired under a cloud in the District of Kansas, public confidence erodes – both in Kansas and in the federal courts – as observers could conclude that the judiciary shields its own or is unwilling to hold fellow judges accountable. Issuing the writ will not harm any third party; it will simply require the lower court to do what the law already requires (issue process) and to do what fundamental fairness requires (step aside for neutral adjudicators). On the other hand, denying the writ would irreparably harm Petitioner and reward the very misconduct alleged. Defendants who are currently evading scrutiny would be further emboldened to destroy evidence and delay, knowing the court will not check them. Petitioner's child – whose medical safety is a concern in the underlying dispute – remains without relief or even a forum for relief.

Equity strongly favors relief. Petitioner files this mandamus petition promptly (within weeks of the offending orders) and seeks no advantage other than a fair opportunity to litigate her case on the merits. She does not ask this Court to rule on the merits of her RICO and civil-rights claims – only to remove the procedural roadblocks that should never have been there and to place the case before judges who can be objective.

Other litigants similarly situated would unquestionably hope for the same intervention if they found themselves before a tribunal that appeared intent on

stifling their case. In this sense, granting mandamus here also serves the systemic interest of signaling that litigants will have recourse if they genuinely face a "justice delayed is justice denied" scenario due to a court's inaction or bias.

Unequal Treatment: While not the primary basis for relief, the Court may take notice that Petitioner's experience is anomalous even within the District of Kansas. As mentioned, another pro se plaintiff's RICO case filed in Eighth Circuit Eastern Missouri at roughly the same time August 14, 2025 was afforded a prompt hearing and engagement by a judge, whereas Petitioner's has been effectively silenced. Such disparity, if unexplained by any legitimate factor, further underlines the perception that Petitioner is being treated differently, perhaps punitively, because of who she is suing and the rights she is advocating (ADA rights, exposure of judicial misconduct). This Court's intervention can correct course and ensure that Petitioner's case receives equal treatment under the law.

## RELIEF REQUESTED

For the foregoing reasons, Petitioner respectfully requests that the Tenth Circuit Court of Appeals issue a writ of mandamus (or other appropriate extraordinary writ) directed to the United States District Court for the District of Kansas (Hon. John W. Broomes and Hon. Teresa J. James), and:

1. Compel the Immediate Issuance of Summons and Service of the Complaint. The district court should be ordered to direct the Clerk forthwith to issue summons for all defendants in Case No. 6:25-cv-01179-JWB-TJJ and arrange prompt service by U.S. Marshal or other authorized means, so that the defendants may be brought under the jurisdiction of the court without further delay.

2. Vacate the Improper Orders Staying Service and Denying Preservation. This Court should nullify and vacate the Magistrate Judge's text Order staying service (Doc. 13) and the Order denying Petitioner's Emergency Motion to Compel Preservation (Doc. 14), as both were issued in excess of the court's authority and in a manner that violates due process. Vacating these orders will restore the case to the procedural posture as if IFP had been granted without a stay and with Petitioner's preservation requests still available for consideration by a neutral court.

3. Order Reassignment of the Case to a Three-Judge Panel of Out-of-District Judges assigned by the Chief Judge of the Tenth Circuit. Pursuant to 28 U.S.C. §§ 292(b) and 294(d), this Court should direct that the underlying case be reassigned to a panel of three judges from outside the District of Kansas. The Chief Judge of the Tenth Circuit should be instructed (or authorized) to designate at least one and preferably three judges from other

federal districts (which may include qualified senior judges from other circuits) with no connections to any defendants listed in the case to preside over all further proceedings in the case. **No judge** from the District of Kansas – whether active or senior, trial or magistrate – should sit on the case, in order to avoid any appearance of partiality or conflict. The three-judge panel may operate in accordance with 28 U.S.C. § ^2284 (by analogy) or under general assignment powers, and may act by majority vote or division of labor as appropriate. This measure, while uncommon, is warranted by the extraordinary circumstances of pervasive local conflicts and proven bias of the district judges as ruled by SCOTUS. It will ensure that decisions in the case are made collectively and transparently by judges with no stake in the outcome and with the requisite expertise to handle a complex RICO matter.

4. Direct Further Proceedings Consistent with the Mandamus Order. The writ should make clear that all prior rulings by the originally assigned judge(s) (including on Recusal motions) are vacated, and that the newly assigned panel is to consider afresh any pending motions (e.g., Petitioner's evidence preservation requests or any Rule 59(e) motion she filed) on an expedited basis. The district court (through the new panel) should also be directed to expedite the case given the delays to date and the ongoing risk of irreparable

harm (the panel can, for example, promptly hold a status conference or evidentiary hearing after service to address preliminary injunctions or preservation issues).

5. Any other relief that this Court deems just and proper to effectuate the purposes of the writ and to ensure that justice is done. This may include, for example, directing the clerk of the district court to file this Petition and appended documents on the district court docket for transparency.

6. That this Court retain temporary constitutional supervisory jurisdiction over all pending federal matters involving Petitioner, and that it reassign said matters to a neutral Article III judicial forum, comprised of three judges with no ties to the Kansas judiciary, under 28 U.S.C. §§ 292(b), 294, and the All Writs Act (28 U.S.C. § 1651).

7. That this Court declare the District of Kansas structurally conflicted and administratively incapacitated from providing a neutral forum to Petitioner, based on the documentary record (Exhibit E), constitutional law (Exhibit F), and federal precedent affirming that procedural shell games violate due process and vitiate all rulings infected thereby.

8. That this Court take judicial notice of Petitioner's pending but unanswered emergency filings in the Kansas Supreme Court (App. Case No. 129285) as

further evidence that no adequate judicial forum exists within Kansas,

requiring intervention under the All Writs Act.

Petitioner respectfully notes that time is of the essence. She therefore requests that

the Court consider issuing the writ *immediately* or as soon as practicable, and in

any event to grant temporary relief (such as an order directing the district court to

show cause why summons has not issued, or a stay of the underlying proceedings

that prevents dismissal) pending the Court's full consideration of this Petition.

## CONCLUSION

Petitioner Angeliina Lynn Lawson has been effectively denied access to a fair and

functioning court in the District of Kansas. The unusual and unjustified actions of

that court have left her no choice but to seek this Court's intervention. The writ of

mandamus exists for exactly such scenarios – where a lower court, through

inaction or improper action, frustrates the administration of justice and harms a

party in ways that ordinary appeal cannot rectify. Petitioner has shown a clear right

to the relief requested and the lack of any alternative remedy. Accordingly,

Petitioner urges this Court to grant the writ and to impose the remedies outlined

above, thereby restoring integrity and forward progress to the underlying

proceedings. Petitioner asks not only for discrete procedural correction, but for a

constitutional judicial forum capable of hearing her claims, as guaranteed by the

Due Process Clause, ADA Title II, and the First Amendment's right to petition the government for redress.

Respectfully submitted,                    Dated: September 10, 2025

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson, Petitioner, pro se

1914 5th Avenue., Leavenworth, KS 66048

(913) 972-1661 | angeliinacourtrecords@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September, 2025, I caused a true and correct copy of the foregoing Petition for Writ of Mandamus and its accompanying appendix/exhibits to be served by U.S. Mail and electronic mail (where available) upon the following:

- Honorable John W. Broomes, U.S. District Judge, District of Kansas (Wichita Division), U.S. Courthouse, 401 N. Market Street, Wichita, KS 67202 – *Respondent*.

- Honorable Teresa J. James, U.S. Magistrate Judge, District of Kansas, 500 State Avenue, Kansas City, KS 66101 – *Respondent*.

- United States District Court for the District of Kansas, Clerk of Court, 500 State Avenue, Room 259, Kansas City, KS 66101 – *for filing & notification purposes*.

- All Defendants once summons is granted in Lawson v. Godderz et al., Case No. 6:25-cv-01179-JWB-TJJ, via their last known addresses or counsel (as listed in the appendix).

- Office of the United States Attorney for the District of Kansas, Attn: Civil Division, as counsel for any federal respondents or interests.

- Chief Judge of the Tenth Circuit for oversight of judicial misconduct complaints pending review and regarding the requested relief under 28 U.S.C. §§ 292(b) and 294.

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson, Petitioner Pro Se

## APPENDIX

*(Table of key documents attached in Appendix – not reproduced here in full)* The full documents are available on the district court docket Lawson v Godderz et al., (Case No. 6:25-cv-01179). Petitioner incorporates them by reference.

1. Verified Complaint (RICO and Civil Rights), Lawson v. Godderz et al., D. Kan. Case No. 6:25-cv-01179 (filed Aug. 15, 2025).

2.  Motion for Out-of-District Judge and Complex Case Designation (Doc. 4, filed Aug. 15, 2025).[3][4]

3.  Emergency Motion to Compel Immediate Production and Preservation of Records (Doc. 5, filed Aug. 15, 2025).[2]

4.  Order Reassigning Case to Judge Broomes (Text Order Doc. 6, entered Aug. 19, 2025).[10]

5.  Minute Order Reassigning Magistrate Judge to Judge James (Text Order Doc. 9, entered Aug. 19, 2025).

6.  Renewed Motion for Assignment to Three-Judge Out-of-District Panel (Doc. 7, filed Aug. 19, 2025).[18][20]

7.  Plaintiff's Motion to Vacate Reassignment to Magistrate James (filed Aug. 19, 2025).[14][15]

8.  Order (Judge Broomes) denying renewed motion for reassignment (entered Aug. 21, 2025)

9.  Order (Mag. Judge James) granting IFP but staying service (Doc. 13, entered Aug. 21, 2025).[26]

10. Order (Mag. Judge James) denying Emergency Motion to Preserve as premature (Doc. 14, entered Aug. 21, 2025).[26]

11. Plaintiff's Rule 59(e) Motion – Court's Replication of Alleged Predicate
    Acts Warrants 3-Judge Out-of-District Reassignment (filed Aug. 21,
    2025).[24]

12. DOJ Letter (excerpt) from Office for Civil Rights correspondence, Apr. 22,
    2025 (showing context of ADA retaliation claims).[28][Exhibit A]

13. SCOTUS and Kansas Court of Appeals Orders in *Garrison v. City of Ottawa*
    and *Garrison v. Ward* confirming prejudice by Judge Eric Godderz and
    voiding judgments (2023). [Exhibit B: Godderz Prejudice SCOTUS File]

14. Verified Petition for Writ of Prohibition and Emergency Motion to Vacate
    Void Custody Orders (Kansas Supreme Court, Appellate Case No. 129285,
    filed July 1, 2025 and Aug. 5, 2025) – Demonstrates ongoing state-level
    inaction, structural jurisdictional collapse, and irreparable harm. [Exhibit C]

15. Notice of Fraud Upon the Court and Preservation of Rule 60(b)(3) Relief,
    filed in *Lawson v. Lawson*, Case No. 5:25-cv-04045 (Doc. 30, July 11,
    2025). Demonstrates concealment of affidavits, falsified court records,
    denial of ADA access, GAL misconduct, and spoliation of evidence after a
    litigation hold was served on over 20 court officials. Serves as foundational
    evidence of fraud on the court under Hazel-Atlas, Rule 60(d)(3), and
    supports RICO predicate acts. [Exhibit D]

16. Litigation History – Jury Trials and Discovery Denied in 100% of Cases. *[Exhibit E]*



**U.S. Department of Justice**

Exhibit A 

Office of Justice Programs

*Office for Civil Rights*

_____

*Washington, D.C. 20531*

March 4, 2025

Angeliina Lawson
1914 5th Avenue
Leavenworth, KS 66048
*angeliinalawson@gmail.com*

     Re:    Lawson v. Kansas Fourth Judicial District Court (25-OCR-0363)

Dear Ms. Lawson:

The Office for Civil Rights (OCR) at the Office of Justice Programs, U.S. Department of Justice (DOJ), received notice of your complaint (Complaint) against the Kansas Fourth Judicial District Court.

OCR is charged with the administrative responsibility for enforcing statutes and regulations relating to discrimination on the basis of race, color, religion, national origin, sex, disability, or age by recipients of DOJ financial assistance.

For OCR to proceed with reviewing your Complaint, we need specific details about your allegations, including dates, times, places, and the names and contact information of alleged perpetrators and witnesses.

Please complete and return the enclosed Complaint Verification Information Form. Although some responses may repeat information that you previously provided, please answer all applicable questions and return this form. OCR must know how you (or whomever you are filing on behalf of) are treated differently from others, how rules and regulations are applied differently, or how programs and activities that are routinely available to others are not made available to you (or whomever you are filing on behalf of) because of at least one of the protected classifications listed above. Once we receive your response, we will use the information to determine whether OCR has jurisdiction over any of the claims you made.

Please also complete and return the enclosed Complainant Consent/Identity Release Form. OCR may need to reveal your identity to persons at the agency or organization identified in your Complaint to evaluate your allegations and receive information about you. If your Complaint was filed on behalf of someone else, that person must complete and sign the Complainant Consent/Identity Release Form. Although consent is voluntary, OCR may not be able to evaluate the Complaint unless this release is authorized.

-OCR-0363
Page 2 of 2

The two forms can be mailed to Office for Civil Rights, Office of Justice Programs, U.S. Department of Justice, 999 N. Capitol Street, NE, Washington, DC 20531.  You may also e-mail the two forms to <u>AskOCR@usdoj.gov</u>.  **If you do not return both forms within thirty (30) days from the date of this letter, OCR will administratively close your Complaint and you will not receive further correspondence from OCR about this Complaint.**

If the two forms are properly completed and returned within the requested time, OCR will assign an attorney to your Complaint to determine the appropriate next steps.

Thank you for contacting DOJ with your concerns.

Sincerely,


Office for Civil Rights
Office of Justice Programs


Enclosures

Complaint Verification Information Form
Complainant Consent/Identity Release Form

A1

## APPENDIX A:

### IN THE APPELLATE COURT OF THE STATE OF
### KANSAS

| | | |
|---|---|---|
| Kurt Garrison | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Levy Ward | ) | |
| Jean Ward | ) | Case No. 21-124662-A |
| Todd Burroughs | ) | |
| Unknown doe(s) | ) | |

Defendants

Title to Real Property Involved
Chapter 60 Kansas Code of Civil Procedure

## MOTION TO STAY ALL PROCEEDINGS PENDING DISPOSITION BY SUPREME COURT OF THE UNITED STATES

Comes now Plaintiff - Appellant Kurt Garrison, unrepresented by counsel, moving the Kansas Court of Appeals for good cause to stay all proceedings in this court and all Kansas courts regarding this case, pending disposition by the Supreme Court of the United States (SCOTUS).

### **Facts**

1. *Garrison v. City of Ottawa, et al.*, 20-CV-12 (first case) was filed January 24, 2020 by Kurt Garrison as plaintiff proceeding without counsel in the Franklin County District Court.

A2

2.  This case, *Garrison v. Ward, et al*, 20-CV-79 (second case) was filed November 18, 2020 by Kurt Garrison proceeding without counsel in the Franklin County District Court some 10 months after *Garrison v. City of Ottawa, et al., id.* (first case) was filed.

3.  Both cases were presided over by District Judge Eric Godderz. Garrison filed motions to change judge in both cases which were heard and denied by Judge Godderz on June 15, 2021.

4.  Garrison filed identical affidavits to remove Judge Godderz as trial judge in this case (second case) and *Garrison v. City of Ottawa, et al., id.* (first case) listing facts in the affidavits that occurred in both this case and *Garrison v. City of Ottawa, et al., id.*

5.  District Judge Witteman ruled that Garrison's affidavits in both cases were insufficient to remove Judge Godderz and Judge Godderz was re-assigned as trial judge in both cases.

6.  Judgment was entered January 19, 2021 in *Garrison v. Ottawa, et al. id.* (first case).

7.  Judgment was entered October 28, 2021 in *Garrison v. Ward, et al. id.* (second case).

8.  Order denying discretionary review in *Garrison v. Ward, et al.* (second case) was entered October 28, 2022 by the Kansas Supreme Court one year after journal entry was filed in the district court.

9.  Order denying discretionary review in *Garrison v. City of Ottawa, et al. id.* (first case) was entered December 15, 2022 by the Kansas Supreme Court about a year and 9 months (21 months) after the journal entry was filed in the district court.

10.  The Kansas Supreme Court Order denying discretionary review in *Garrison v. City of Ottawa, et al. id.* (first case) was filed *after* Kansas Supreme Court Order denying discretionary review was filed in this case (second case).

A3

11.  The delay in *Garrison v. City of Ottawa, et al. id.* (first case) was due to non-feasance of Judge Godderz (See pp. 27-29 of writ of certiorari, *infra.*)

12.  Garrison filed a petition for writ of certiorari in *Garrison v. City of Ottawa, et al. id.* (first case) with the Supreme Court of the United States due in part to Judge Godderz' prejudice against Garrison proceeding without counsel, and bias in favor of parties represented by counsel, (See pp. 27-36 of writ of certiorari).  A true copy of said petition for writ of certiorari is attached as exhibit A adopted by reference, incorporated herein, and made a part hereof.

13.  Proceedings in the trial court in this case *Garrison v. Ward, et al. id.* (second case) showing prejudice of Judge Godderz against Garrison are included in said petition for writ of certiorari, *id.* See Appendix A at pp. 34-36.

14.  Order of SCOTUS remanding *Garrison v. City of Ottawa, et al., id.* (first case) to the district court and assigning a different trial judge due to Judge Godderz'a prejudice against Garrison, renders the judgment of the trial court in *Garrison v. City of Ottawa, et al., id.* void.

15.  This second case *Garrison v. Ward, et al. id.*, adjudicated by District Judge Godderz **after** *Garrison v. City of Ottawa, et al., id.* (first case), also becomes void when SCOTUS remands *Garrison v. City of Ottawa, et al., id.* to the district court before another trial judge due to prejudice of Judge Godderz against Garrison as detailed in said petition for writ of certiorari attached as exhibit A.

## RELIEF

From the foregoing and as a matter of law, the Kansas Court of Appeals and all Kansas courts should stay all proceedings in this case pending disposition of *Garrison v. City of Ottawa, et al., id.* by the Supreme Court of the United States.

This 24th day of March 2023

/s/ Kurt Garrison, BSME, J.D.

B1

APPENDIX B:

## IN COURT OF APPEALS OF THE STATE OF KANSAS

Case No. 124,662

KURT GARRISON,
*Plaintiff - Appellant,*

v.

Levy Ward and Jean Ward.
*Defendant - Appellees.*

### ORDER

The court grants Appellant's motion to stay all proceedings pending disposition by the Supreme Court of the United States. Appellant is ordered to serve and file with the Clerk of the Appellate Court by June 1, 2023, a written report on the status of the pending petition for writ of certiorari, with status reports to follow on the first day of each month while pending.

Dated this 1st day of May 2023.

FOR THE COURT

/s/, Jacy J. Hurst

JACY J. HURST, Presiding Judge

C1

APPENDIX C:

SUPREME COURT OF THE UNITED STATES

Kurt Garrison
*Petitioner,*

v.                                    Case No. 22-1004

City of Ottawa
Wynndee Lee, Jim Sherman, Curt Altic
*Respondents*

*On petition for certiorari from the Kansas Supreme
Court, Order denying Discretionary Review dated
December 15, 2022, and Kansas Court of Appeals
Case no. 124309.*

**MOTION TO TAKE JUDICIAL NOTICE OF
SUBSEQUENT ORDER OF KANSAS COURT OF
APPEALS ACKNOWLEDGING NONFEASANCE,
PREJUDICE AND BIAS OF TRIAL JUDGE**

Comes now Petitioner Kurt Garrison, unrepresented
by counsel, filing this Motion to Take Judicial Notice
of Subsequent Order of Kansas Court of Appeals
Acknowledging Non Feasance, Prejudice, and Bias of
Trial Judge per Supreme Court Rule 21.1, prepared
per Supreme Court Rule 33.2 and moving the
Supreme Court of the United States (SCOTUS) for
good cause to take judicial notice of Order dated May
1, 2023 issued by the Kansas Court of Appeals (after
December 22, 2022 Order of Kansas Supreme Court
denying discretionary review) acknowledging

C2

nonfeasance of trial judge in this case, prejudice and
bias of trial judge in this case and subsequent case
*Garrison v. Ward, et al.* Kan. App. no. 21-124662.

### Facts Justifying Judicial Notice

1.  This case filed March 13, 2023 in this Supreme
Court by petition by writ of certiorari, was originally
filed in the Franklin County Kansas District Court
January 24, 2020 by Kurt Garrison as plaintiff
proceeding without counsel as *Garrison v. City of
Ottawa, et al.*, 20-CV-12 (first case).

2.  *Garrison v. Ward, et al*, 20-CV-79 (second case)
was filed November 18, 2020 by Kurt Garrison
proceeding without counsel in the Franklin County
Kansas District Court some 10 months after this first
case was filed in the district court.

3.  Both cases were presided over by District Judge
Eric Godderz (trial judge). Garrison filed motions to
change judge in both cases which were both heard
and denied by Judge Godderz on June 15, 2021.

4.  Garrison immediately filed identical affidavits
to remove Judge Godderz as trial judge in this first
case and *Garrison v. Ward, et al., id.* (second case)
listing facts in affidavits that occurred in both this
case, *Garrison v. Ward, et al., id.*, and three other
previous cases where Garrison was party and Judge
Godderz presided.

5.  Said motions to change judge were assigned to
Franklin County Kansas District Judge Witteman
who erred by using the incorrect standard of review
when ruling that Garrison's affidavits in both cases
were insufficient to remove Judge Godderz.
Thereafter Judge Godderz was re-assigned as trial
judge in both cases.

C3

6. Judgment was entered against Garrison by Judge Godderz in the trial court January 19, 2021 in this first case *Garrison v. Ottawa, et al. id.*

7. Judgment was entered against Garrison by Judge Godderz in the trial court October 28, 2021 in *Garrison v. Ward, et al. id.* (second case).

8. Order denying discretionary review in *Garrison v. Ward, et al.* (second case) was entered October 28, 2022 by the Kansas Supreme Court one year after journal entry was filed in the district court.

9. Order denying discretionary review by the Kansas Supreme Court in *Garrison v. City of Ottawa, et al. id.* in this first case was entered December 15, 2022 about a year and 9 months (21 months) after the journal entry was filed in the district court and ***after*** the Kansas Supreme Court denied discretionary review on *Garrison v. Ward, et al.* (second case).

10. March 13, 2023, Garrison filed a petition for certiorari in this first case with this Supreme Court of the United States which is incorporated herein, adopted by reference and made a part hereof.

11. The delay in *Garrison v. City of Ottawa, et al. id.* (first case) was due to non-feasance of Judge Godderz. (See pp. 27-29 of writ of certiorari)

12. Said petition for writ of certiorari in this first case was filed in part due to non feasance of Judge Godderz' in this first case, and prejudice against Garrison proceeding without counsel, and bias in favor of parties represented by counsel, in both this case and *Garrison v. Ward, et al. id.* (See pp. 27-36 of writ of certiorari).

13. Proceedings in the trial court in *Garrison v. Ward, et al. id.* (second case) showing actual prejudice of Judge Godderz against Garrison are included in

C4

said petition for writ of certiorari, *id.* (See pp. 34-36 of writ of certiorari in this case).

14. Order of SCOTUS remanding *Garrison v. City of Ottawa, et al., id.* (first case) to the district court and assigning a different trial judge due to Judge Godderz' non feasance, prejudice against Garrison and bias in favor of other parties, renders the judgment of the trial court in *Garrison v. City of Ottawa, et al., id.* void.

15. The second case *Garrison v. Ward, et al. id.,* adjudicated by District Judge Godderz **after** *Garrison v. City of Ottawa, et al., id.* (first case), also becomes void when SCOTUS remands *Garrison v. City of Ottawa, et al., id.* to the district court due to actual prejudice of Judge Godderz against Garrison and bias in favor of opposing parties as shown in said petition for writ of certiorari pp. 27-36.

16. March 27, 2023 Garrison filed a motion to stay all proceedings in *Garrison v. Ward, et al. id.* based upon facts 1-15 listed in this motion for judicial notice which included a true and correct copy of said petition for writ of certiorari filed March 13, 2023 with this Supreme Court of the United States in this first case.

17. May 1, 2023, an Order was issued by the Kansas Court of Appeals in *Garrison v. Ward, et al. id.* **staying all proceedings** in *Garrison v. Ward, et al. id.* (second case) due in part to facts listed in petition for writ of certiorari raising nonfeasance of Judge Goddera in this case[7] and prejudice appearing in the record in *Garrison v. Ward, et al. id.*[8] A true and correct copy of said May 1, 2023 Order is

---

[7] See pp. 27-29 of petition for writ of certiorari on file in this case.
[8] See pp. 34-36 of petition for writ of certiorari on file in this case.

C5

attached as Exhibit "A" incorporated herein, made a part hereof and adopted by reference.

18. Said May 1, 2023 Order staying all proceedings in *Garrison v. Ward, et al. id.* (Exhibit "A") acknowledges said nonfeasance, prejudice and bias exhibited by trial Judge Godderz (see pp. 27-36 in Garrison's Petition for Writ of Certiorari in this case) and stays all proceedings in second case *Garrison v. Ward, et al. id.* pending disposition of this case before SCOTUS.

19. Said May 1, 2023 Order (Exhibit "A") was issued ***after*** Garrison's Petition for Writ of Certiorari was filed in this case March 13, 2023.

20. Said May 1, 2023 Order in *Garrison v. Ward, et al. id.* (Exhibit "A") (second case) is material and relevant to the disposition of this first case now before the Supreme Court of the United States and should be given full consideration when adjudicating this earlier first case, *Garrison v. Ottawa, et al.* filed as case no. 22-1004 in this Supreme Court of the United States.

## RELIEF

FROM THE FOREGOING, Justices of this Supreme Court of the United States may take judicial notice of said May 1, 2023 Order (Exhibit "A") staying all proceedings in subsequent case *Garrison v. Ward, et al. id.* which acknowledges nonfeasance, prejudice and bias of trial Judge Godderz when considering disposition of this case now before this Supreme Court of the United States, and grant Garrison all relief as a matter of fact, law, equity and as justice requires.

C6

Respectfully submitted this 30th day of May, 2023

/s/ Kurt Garrison, BSME, J.D.
P.O. Box 693
Ottawa, KS  66067
Ph. (785) 214-1581
email: kcgarrison@kwikom.net


EXHIBIT "A"

[Petition for Writ of Certiorari in *Garrison v. Ottawa, et al.* Case. No. 22-1004 filed March 13, 2023 in this case before the Supreme Court of the United States]

SUPREME COURT OF THE UNITED STATES

Kurt Garrison
*Petitioner,*

v.                                                    No. 22-1004

City of Ottawa
Wynndee Lee, Jim Sherman, Curt Altic
*Respondents*

RULE 44.1 CERTIFICATE OF COMPLIANCE
PETITION FOR REHEARING FOR WRIT OF
CERTIORARI

      Comes now Petitioner Kurt Garrison filing this certificate of compliance for Petition for Rehearing for Writ of Certiorari in this above styled case. Said Petition for rehearing is brought in good faith and not for the purpose of delay.

This 14th day of July, 2023

Kurt Garrison, BSME, J.D.
P.O. Box 693
Ottawa, KS  66067
Ph. (785) 214-1581
email: kcgarrison@kwikom.net

Exhibit C

IN THE SUPREME COURT OF THE STATE OF KANSAS

In re: Writ of Prohibition against Hon. Eric W. Godderz

Case No.: 129285

Related Lower Court Case: Anderson County Case No. 2020-DM-131 currently removed to federal appeals 10th circuit

Petitioner: Angeliina Lynn Lawson
Pro Se
1914 5th Ave., Leavenworth, KS 66048
AngeliinaCourtRecords@gmail.com
(913) 972-1661

Respondent: Hon. Eric W. Godderz
District Judge, Fourth Judicial District
Anderson County Courthouse
Garnett, KS 66032

**VERIFIED PETITION FOR WRIT OF PROHIBITION**

(Lack of Subject Matter Jurisdiction—All Orders Void ab Initio)

**TO THE HONORABLE JUSTICES OF THE KANSAS SUPREME COURT:**

Petitioner, Angeliina Lynn Lawson, appearing pro se, respectfully petitions this Court to issue a Writ of Prohibition restraining Judge Eric W. Godderz, District Judge of the Fourth Judicial District, further action in Case No. 2020-DM-131, on grounds that Anderson County District Court has exercised jurisdiction unlawfully from inception. Because venue and subject matter jurisdiction were never established under Kansas law, all resulting orders are void ab initio.

**I. LEGAL BASIS FOR WRIT**

A writ of prohibition is appropriate when a lower court exceeds its jurisdiction. See *State v. Lynch*, 301 Kan. 580 (2015). A court that exercises power in the absence of subject matter jurisdiction renders its orders legally void. *State v. Mertz*, 258 Kan. 745 (1995); *State v. Sims*, 254 Kan. 1 (1993).

## II. FACTUAL BACKGROUND

1. This matter arises from a divorce petition filed by Jonathan David Lawson in Anderson County in 2020. Neither party has ever resided in Anderson County, and no statutorily sufficient grounds under **K.S.A. 23-2703 and 23-2708** were satisfied, which mandates that a divorce may only be filed in the county "in which the petitioner has been an actual resident for 60 days preceding the filing." When the court lacks proper venue and residency is absent, the filing is improper and jurisdictionally defective.

2. Petitioner and the minor child have continuously resided in Johnson and Leavenworth Counties since the time of the divorce. All familial, educational, religious, medical, and community ties—including friends, extended family, sports teams, religious institutions, extracurricular activities, witnesses, and relevant court services—are located nearly two hours away from Anderson County.

3. This distance imposes an undue burden on Petitioner, especially as a pro se litigant proceeding under a poverty affidavit, making it functionally impossible to appear in person, access physical records, or secure witnesses.

4. The travel requirements also force Petitioner to miss work, creating additional financial hardship and obstructing her constitutional right to access the courts.

5. The child nor parent have any services or connections in Anderson County. Despite this, the matter was adjudicated in Anderson County where Judge Godderz retained the case.

6. Judge Godderz refused to confirm venue or jurisdiction under **K.S.A. 60-609**, despite two formal motions to transfer venue and a joint stipulation from attorneys acknowledging improper venue.

7. During the end of October 2024 hearing, Judge Godderz asked if there is any other items of business to which Petitioner's former counsel brought up the Motion to Change Venue that was never allowed to have a hearing. Judge Godderz openly stated: "No! I will never allow any case to leave my county. I am too familiar with the parties, especially that mother." This is evidence of bias and extrajudicial motivation to retain cases improperly.

8. Following Petitioner's efforts to transfer venue, Petitioner experienced a pattern of retaliation, extortion, coercion:

   - Judge Godderz issued a custody-altering order based on an emergency ex parte motion (Index #16), without providing Petitioner with notice, an opportunity to read the supporting GAL email, or a hearing. This action violated Petitioner's rights under the Fourteenth Amendment, **K.S.A. 60-255, K.S.A. 23-3203, and K.S.A. 23-3401(b)(2).** Further, the denial of access to court communications and refusal to permit Petitioner to speak or read filings during the hearing, cross-examine the GAL, there was never an evidentiary hearing that followed. while knowing of her ADA-requested accommodations, violated **42 U.S.C. § 12132 and § 12203** (ADA Title II and retaliation). Petitioner still, today, does not have a copy

2

of this motion because the GAL, opposing counsel and clerk have all refused to provide a copy yet all hearings have been based on this email.

- All orders stemming from this unlawful ex parte proceeding are void ab initio.
- Under the spirit of **K.S.A. 23-3401(b)(2),** a denial of custody or parenting time under a temporary order requires a hearing within 21 days of the request. Petitioner has been denied access with her child for 11 months, from September 17, 2024 to present, without a hearing or evidentiary review, in direct violation of Kansas statute and constitutional due process. Justice delayed is justice denied.
- Petitioner was granted only one supervised visit per week for two hours for trying to move the venue and the father delayed the start of this for 3 months with no consequences and is currently refusing to pay his portion and repeatedly cancels visits stretching out weeks in between.
- Child has stated during supervised visits that "in order to be close with my Dad I know I have to erase you." Judge Godderz used his courtroom to orchestrate state-sanctioned parental erasure just to keep the case in his county for political or economic reasons and under the watch of Chief Judge Taylor Wine.
- When Petitioner's counsel began preparing for trial by issuing subpoenas and presenting witness lists the opposing counsel emailed not sure what the trial is for showing there was no thoughts of Petitioner's unfitness as a parent but once opposing counsel learned that Petitioner was setting up witnesses and subpoenas then and only then did the opposing counsel threaten a motion for a psychological evaluation against Petitioner to obstruct justice. This retaliation for proper due process procedure is unethical and coercive to prevent change of venue.
- ADA accommodations were denied repeatedly, including access to CART during hearings, Zoom links were never sent out as Pro Se litigant, denial of CART notes, and hearing transcripts.

9. Petitioner was never properly served the divorce petition or subsequent notices of hearings and orders. She was excluded from proceedings and filings due to clerical suppression and obstruction. This denial of notice violates **K.S.A. 60-304 and K.S.A. 60-255**, as well as the Fourteenth Amendment.

10. Judicial and court officer communications uncovered through KORA requests show that internal court staff circulated personal statements smearing Petitioner's reputation in communications with ADA coordinators, court staff, clerks and legal officials, in violation of due process and administrative neutrality.

11. Guardian ad Litem Andrew Bolton began fraudulently billing and exerting influence in the case before his formal appointment, and engaged in ex parte communications with Judge Godderz, DCF and opposing counsel. Bolton threatened the minor child to do worse to his mother (Petitioner) if he continued to report abuse and made therapy decisions that denied the child ADA-protected accommodations. Bolton continues to act under improper authority. Father's

suicidality was documented by DCF but dismissed by the Judge while restricting Petitioner's access to minor child who showed no signs of instability or unfitness.

12. Petitioner filed ADA grievances that were obstructed by judicial ADA coordinators Kelly Johnson and Jolene Zirkle. These grievances were wrongfully closed, or interfered with by unauthorized parties, in retaliation for federal filings and protected activities.

13. A judicial complaint, motions to recuse, GAL misconduct, tampering of docket, notices of fraud, federal civil rights action, and federal removal (2:25-cv-02199 appealed to 10th Circuit) were filed by Petitioner. Despite the automatic stay provisions of **28 U.S.C. § 1446(d)**, Judge Godderz proceeded with hearings, orders that were never served to Petitioner, entertaining motions from opposing counsel that were also never served to Petitioner, violating federal law.

14. Anderson County exhibits a systemic pattern of improperly retaining "emergency" divorce and custody filings from across Kansas. Public bond records and tax increases raise credible concerns that these family court cases generate financial benefits for local institutions such as the county hospital or court-appointed vendors, creating a perverse incentive structure.

15. By accepting the initial divorce filing without jurisdiction, the Court committed a fundamental legal error, nullifying every subsequent order—including divorce, temporary custody changes, ex parte modifications, appointment of the Guardian Ad Litem, and financial determinations—under *In re Marriage of Welliver*, 254 Kan. 801 (1994) (jurisdiction cannot be assumed; it must appear affirmatively from the record).

16. In addition to the jurisdictional defect, the record reflects material fraud on the court by Petitioner Jonathan David Lawson, who:

a. Failed to disclose substantial assets, business appraisal and income during the original divorce proceedings in violation of Kansas law requiring full and fair financial disclosure (see *In re Marriage of Wherrell*, 274 Kan. 984 (2002));

b. Withheld banking, forgiven PPP loans, employment, and retirement information from the Petitioner but used her financial documents to block her from receiving COVID aid, impeding equitable division;

c. Used shell accounts, asset transfers, vehicles and informal payment streams that were never disclosed to the court during financial discovery or enforcement hearings;

d. Violated local rules of mandatory disclosure under Kansas domestic relations procedure, committing perjury or omission to manipulate court outcomes.

17. This fraud, once brought to the court's attention, was never investigated or remedied by Judge Godderz, who refused to enforce discovery, enforce child support expenses or maintenance in the arrears appx. $32,000 or compel financial disclosures—denying Petitioner any opportunity to challenge the integrity of the financial settlement.

18. Under **Rule 60(b)(3)** and *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), fraud on the court is an extraordinary ground for vacating judgments, especially when:
    1. The fraud is intentional;
    2. It materially affects the court's ability to adjudicate fairly;
    3. The fraud causes one party to be deprived of a meaningful hearing.

19. Because this fraud was committed in a court that never had jurisdiction to adjudicate the divorce in the first place, any order relying on those misrepresentations is doubly void: both for lack of jurisdiction and for constitutional fraud.

20. Petitioner was never properly served with the divorce petition, nor was she provided with any notice of hearings, orders, filings, or judicial actions, in violation of:

    - **K.S.A. 60-304** (service of process);
    - **U.S. Const. Amend. XIV** (Due Process);
    - **K.S.A. 60-255**, requiring opportunity to defend before default or adverse rulings.

21. The Anderson County Clerk's Office failed or refused to send notice of hearings or filings to Petitioner at any point during the proceedings. This denial of fundamental notice amounts to a constructive denial of access to the courts as a qualified individual with a disability, and renders all resulting orders void for want of due process.

22. Judge Godderz has established a disturbing pattern of accepting "emergency" divorce filings from outside Anderson County, bypassing statutory venue restrictions in **K.S.A. 23-2703** and **23-2708**, which has:

    - Attracted thousands of divorce and custody filings statewide into a rural district lacking connection to the parties;
    - Created a court pipeline that grants one-sided relief to petitioners with ex parte temporary orders immediately against the other side before they have a chance to be served while denying due process to parents;
    - Resulted in unreviewable, often secretive court orders that cannot be appealed due to suppression of notice and failure to issue timely orders.

23. Reports and public bond data indicate that Anderson County carries hospital and infrastructure debts disproportionate to its tax base, raising alarming questions about whether the influx of family law cases—including forced predatory alienation against any parent who is enforcing their constitutional rights and parental protections into poverty to silence them, removal of children to coerce and extort financially forcing psychological evaluations, supervised visits, GAL appointments, and court-ordered therapy—financially props up private and public slush funds through:

- Court appointments and contracts padded through unaccountable judicial discretion;
- GAL fees, supervised visit charges, and court-appointed therapist that do not report child abuse filtered through local vendors connected to the judiciary;
- Municipal bonds whose solvency may be quietly subsidized by the volume of statewide family cases improperly venued in Anderson County.

24. This is a systemic pattern of:

- Racketeering and civil conspiracy to obstruct parental rights and financial justice;
- Forum shopping and judicial trafficking of family court litigants into a debt-leveraged jurisdiction;
- Ongoing fraud on the court, civil rights violations, and deprivation of property without due process, in violation of **42 U.S.C. §§ 1983, 1985(3), 12132, and 18 U.S.C. § 1341 et seq.**

25. Petitioner previously filed a related Writ of Mandamus (**#128839** filed on March 13, 2025) which has still not been placed on the docket for hearing. This Petition incorporates those filings by reference and preserves all claims therein.

Because jurisdictional fraud, absence of notice, lack of service, and financial exploitation are present, no presumption of regularity applies to any ruling in Case No. 2020-DM-131. The entire case must be treated as void ab initio under Kansas and federal law.

## III. LAW AND ANALYSIS

### A. Subject Matter Jurisdiction and Venue

- Under **K.S.A. 23-2703 and 23-2708**, residency and venue are a jurisdictional prerequisite to initiating divorce proceedings.
- Courts are not permitted to waive, presume, or overlook venue defects.
- The failure to transfer venue after an uncontested request renders further proceedings unlawful under **K.S.A. 60-602, 60-604, and 60-609**.
- Failure to confirm venue at the inception of the action deprives the court of subject matter jurisdiction. Venue is a component of subject matter jurisdiction. *In re Marriage of Welliver*, 254 Kan. 801 (1994).
- *See also*: *State ex rel. Secretary of SRS v. Castro*, 235 Kan. 491 (1984); *City of Overland Park v. Nikias*, 209 Kan. 643 (1972).

### B. Orders Made Without Jurisdiction Are Void Ab Initio

- An order made without subject matter jurisdiction "is a legal nullity, of no effect." *State v. Sims*, 254 Kan. 1 (1993).
- This includes divorce, change in custody, GAL appointments issued under void jurisdiction.

6

- The court's ongoing conduct amounts to a usurpation of judicial authority, and a Writ of Prohibition is the only remedy to halt this systemic abuse.

*C. Improper Venue as Jurisdictional Overreach Rendering All Orders Void*

Although venue is technically distinct from subject-matter jurisdiction, Kansas law recognizes that a court must still operate within the bounds of lawful authority**.** Under **K.S.A. 23-2703 and 23-2708** and **K.S.A. 60-602, 60-604, and 60-609**, family law cases such as divorce and custody must be filed in the proper county of residence, and when venue is challenged, the court is required to transfer the case to the correct jurisdiction.

In this case, Judge Godderz was presented with undisputed evidence, and even stipulations from all attorneys, that neither party resided in Anderson County**,** and thus venue was facially improper. Yet, Judge Godderz refused to rule on the venue transfer motion for nearly a year, ultimately declaring on the record:

*"I will never allow any case to leave my county. I am too familiar with the parties, especially that mother."*

This refusal to relinquish a case that never properly belonged in his jurisdictional district constitutes an unlawful retention of power. While Kansas courts possess general subject-matter jurisdiction over domestic cases, venue rules act as jurisdictional restraints when they are knowingly and deliberately violated to deprive a party of a fair and lawful forum. The Kansas Supreme Court has held that a court acts without jurisdiction or authority when it proceeds in a matter that does not legally belong before it due to statutory limitations (see *Bleakley v. Smart*, 74 Kan. 476).

Accordingly, when Judge Godderz continued to act in this case despite the acknowledged venue defect and refused to perform the ministerial act of transferring the case under **K.S.A. 60-609**, he exceeded the lawful scope of judicial authority, rendering his orders void for lack of jurisdictional power**.** This is not a mere procedural error—it is an abuse of discretion so severe that it strips the court of legitimacy under both Kansas law and the Fourteenth Amendment's Due Process Clause**.**

*Where a court exercises authority it affirmatively knows it does not possess, its orders are not merely voidable—they are void ab initio.*

**Inadequacy of Other Remedies.** While the ordinary remedy for legal error would be an appeal to the Kansas Court of Appeals following entry of a final judgment, no such judgment has been entered in this case—nor is one likely to be, due to the ongoing conduct of the presiding judge, which has effectively stalled the proceedings. Petitioner is thus trapped in a procedural catch-22: unable to appeal without a final judgment, yet suffering ongoing irreparable harm—including the loss of parental rights and denial of due process—that cannot await indefinite resolution. Kansas law does not generally allow interlocutory appeals from temporary custody orders or from refusals to rule on disqualification motions. Moreover, traditional remedies such as motions, administrative

requests, and local procedures have proven ineffective or been affirmatively obstructed. Accordingly, no plain, speedy, or adequate remedy exists in the ordinary course of law, and this Petition for Writ of Prohibition is both necessary and appropriate under these extraordinary circumstances.

## IV. PRESERVATION OF FEDERAL CLAIMS

- Petitioner reserves all federal claims under:
  - **42 U.S.C. § 1983 (civil rights violations)**
  - **42 U.S.C. § 12132 (ADA Title II)**
  - **42 U.S.C. § 12203 (ADA retaliation)**
  - **18 U.S.C. §§ 1341, 1343 (mail/wire fraud)**
  - **18 U.S.C. § 1962 (civil RICO pattern of predicate acts)**

This Writ is not only about a breakdown in procedure—it is about a disabled child who has been cut off from his mother without lawful cause or hearing. It is about a disabled parent systematically excluded from the very court proceedings used to label her unfit, without ever being allowed to defend herself. The law provides remedies not just for technical wrongs, but to restore dignity and fairness when entire systems fail.

## V. REQUEST FOR JUDICIAL DISQUALIFICATION OR SUSPENSION UNDER RULE 611

Petitioner respectfully requests that this Honorable Court take additional action under **Kansas Supreme Court Rule 611**, which permits the suspension, discipline, or removal of a judge whose conduct compromises impartiality, judicial integrity, or fitness to serve**.**

Judge Eric W. Godderz has demonstrated ongoing, disqualifying bias and misconduct that warrant immediate disqualification or administrative suspension from further proceedings in Case No. 2020-DM-131 or any related matters involving Petitioner or her minor disabled child. Specifically:

- Judge Godderz refused to confirm jurisdiction or transfer venue**,** despite two formal motions and agreement from all attorneys that venue was improper under **K.S.A. 23-2703 and 23-2708 and K.S.A 60-602, 60-604, and 60-609;**
- On the record, Judge Godderz admitted: *"No! I will never allow any case to leave my county. I am too familiar with the parties, especially that mother."* This statement demonstrates both bias and a refusal to follow the law, constituting cause for recusal and discipline;
- The judge retaliated against, financially coerced, and intimidated Petitioner for filing change of venues, ethics complaints and ADA grievances by granting a one-sided motion to compel a psychological evaluation of Petitioner, while ignoring documented abuse reports, police reports, child pornography, sexually explicit demands to a minor child, DCF documentation of father's threats to kill

8

himself if disabled child continues to take his medication and due process, litigation abuse, fraud and extortion violations by the opposing party;

- Judge Godderz continued proceedings, issued orders, entertained opposing counsels motions to financially coerce Petitioner, allow father to break court orders and not pay and cancel supervised visits to de facto terminate Petitioner's parental rights post-removal to federal court, in violation of **28 U.S.C. § 1446(d),** further demonstrating disregard for jurisdictional boundaries and federal supremacy;

- Petitioner has filed a formal judicial ethics complaint (**Supreme Court Rule 611**), Writ of Mandamus (**#128839**), and in federal court Writ of Habeas Corpus, Writ of Certiorari for the clerk to stop sabotaging the federal removal and committing fraud on the court by misrepresenting in the docket that a hearing occurred on the venue motion on October 29, 2024, when in fact no such hearing took place, thereby manufacturing a false record to defeat appeal or federal review. This documented systemic denial of due process, ADA violations, suppression of filings, refusal to issue orders, improper delegation of judicial duties, and ex parte conduct—all of which support immediate judicial discipline.

Because Judge Godderz's conduct has rendered meaningful relief impossible in his courtroom, his chambers, and reach into other courts to influence state judges over other cases as Petitioner works legally to find remedy and reflects a pattern of systemic abuse and conspiracy to deprive Petitioner of constitutional and parental rights. Petitioner requests that the Court take up this matter under **Rule 611** and permanently disqualify Judge Godderz from all proceedings and matters involving Petitioner and her child.

## VI. RELIEF REQUESTED

WHEREFORE, Petitioner prays for this Honorable Court to:

1. Issue a Writ of Prohibition restraining Judge Eric W. Godderz from any further action in Case No. 2020-DM-000131;
2. Declare void ab initio all prior orders issued in said case due to the fundamental error defect in subject matter jurisdiction;
3. Mandate immediate transfer of the case to Johnson County, the only county with jurisdictional standing;
4. That the Court preserve all facts and findings herein for reference in any ongoing or future federal proceedings;
5. Grant such other and further relief as this Court deems just and appropriate.

Respectfully submitted,                                      Date: July 1, 2025


Angeliina Lynn Lawson
Pro Se Petitioner
1914 5th Ave., Leavenworth, KS 66048

AngeliinaCourtRecords@gmail.com
(913) 972-1661


# CERTIFICATE OF SERVICE

I, the undersigned, certify that on this 1st day of July, 2025, I filed the foregoing:

**Verified Petition for Writ of Prohibition**,
including Appendix of Exhibits,

with the Clerk of the Kansas Supreme Court using the US Mail. I further certify that a true and correct copy of the foregoing was also served via US Mail certified mail to any non-registered parties as required.

- Hon. Eric W. Godderz
  District Judge, Fourth Judicial District
  Anderson County Courthouse
  100 E 4th Ave
  Garnett, KS 66032
- BreAnne Hendricks Poe
  Attorney for Jonathan Lawson (Petitioner in lower court)
  The Law Office of BreAnne H. Poe
  427 S. Main St., Ottawa, KS 66067

Respectfully submitted,



Angeliina Lynn Lawson
Pro Se Petitioner
1914 5th Ave., Leavenworth, KS 66048
AngeliinaCourtRecords@gmail.com
(913) 972-1661

Date: July 1, 2025

Exhibit C

IN THE SUPREME COURT OF THE STATE OF KANSAS

Appellate Case No.: 129285

ANGELIINA LYNN LAWSON,

Petitioner,

v.

JUDGE ERIC W. GODDERZ,

Respondent.

In re: Verified Petition for Writ of Prohibition against Hon. Eric W. Godderz

District Court Case No.: 2020-DM-131

EMERGENCY MOTION TO VACATE VOID CUSTODY ORDERS FOR LACK OF
SUBJECT MATTER JURISDICTION

COMES NOW the Petitioner, Angeliina Lynn Lawson, appearing pro se, and respectfully
submits this specific Emergency Motion within the above-captioned Writ of Prohibition
proceeding, and moves this Honorable Court to issue an Order vacating all custody and parenting
orders issued by Judge Eric W. Godderz in Case No. 2020-DM-131 (Anderson County District
Court), on grounds that such orders are void ab initio due to the court's lack of subject matter
jurisdiction under Kansas law.

I. LEGAL BASIS FOR RELIEF

This Motion is brought pursuant to K.S.A. 60-260(b)(4), which authorizes relief from orders and judgments that are "void." A judgment is void if the issuing court lacked jurisdiction over the subject matter at the time it was entered. *State v. Mertz*, 258 Kan. 745 (1995); *State v. Sims*, 254 Kan. 1 (1993).

Additionally, under K.S.A. 23-2703 and K.S.A. 60-609, venue and jurisdiction for divorce and custody proceedings are determined by the residence of the parties. Neither Petitioner nor Respondent resided in Anderson County at the time of filing and there has been two attempts to challenge jurisdiction with judge refusing to grant a hearing on them. As such, Anderson County District Court was without lawful authority to adjudicate the matter, and all proceedings stemming from that filing are invalid.

II. FACTUAL BACKGROUND

1. Petitioner and the minor child have continuously resided in Johnson and Leavenworth Counties since the time of the divorce.

2. The divorce and custody action was improperly filed in Anderson County (Case No. 2020-DM-131), despite no party meeting the residency requirements of K.S.A. 23-2703.

3. Petitioner filed a motion to transfer venue twice under K.S.A. 60-609, which the court failed to address.

4. On October 29, 2024, Judge Godderz stated on the record at the end of another hearing:

   *"I will never allow any case to leave my county. I am too familiar with the parties, especially that mother."*

5. Judge Godderz subsequently issued zero-contact temporary custody and parenting orders, including an emergency ex parte order (Index #16) for no emergency, without holding a hearing, without proper service, and without legal jurisdiction and severed a disabled mother and her disabled child bond for no cause, no evidence of unfitness.

6. Petitioner filed a Notice of Removal May 6, 2025 to federal court, triggering the automatic stay under 28 U.S.C. § 1446(d). Judge Godderz continued issuing orders in violation of federal law.

7. With each passing day that the void custody order remains uncorrected, the minor child suffers greater psychological harm and detachment from the Petitioner. These conditions are consistent and documented with clinical patterns of parental alienation, a form of child abuse which the Kansas courts have acknowledged can constitute endangerment.

8. The minor child has expressed to Petitioner that he wishes to spend more time with her, but feels he must suppress that desire in order to maintain closeness with his father. The child has canceled visits to appease the father, indicating emotional pressure and psychological coercion. There is no evidence that the father is willing or able to co-parent, and his counsel appears to encourage obstruction of reunification efforts and defiance of prior court orders.

9. While Petitioner remains in procedural limbo due to ongoing federal litigation, the father has taken advantage of the delay to undermine the parent-child relationship. Since receiving temporary sole custody, the father has failed to provide any photographs,

updates on the child's well-being, school progress, or medical care and it has been 11

months. Instead, he has actively deleted the mother's contact from school records,

removed her from medical provider access, and erased the child's ability to communicate

with her through his phone and laptop. These actions serve to isolate, control, and

dominate the child, resulting in unlawful separation that is both medically and

developmentally harmful.

## III. ARGUMENT

Orders issued without subject matter jurisdiction are void ab initio and must be vacated. *Welliver*

*v. Welliver*, 254 Kan. 801 (1994); *Castro v. Secretary of SRS*, 235 Kan. 491 (1984).

The Anderson County District Court lacked jurisdiction to adjudicate custody under K.S.A. 23-

2703 because no party resided there. Venue was never confirmed under K.S.A. 60-609. All

subsequent orders, including custody and parenting restrictions, are therefore nullities.

Additionally, the court's continuation of proceedings after a federal removal violated 28 U.S.C. §

1446(d), further voiding the actions of the state court.

## IV. RELIEF REQUESTED

Petitioner respectfully requests this Honorable Court to:

1. Declaratory judgement that Anderson County District Court lacked subject matter

   jurisdiction in Case No. 2020-DM-131;

2. Vacate all custody, parenting time, and related orders issued by Judge Eric W. Godderz in that case 2020-DM-131 as void ab initio;

3. Order immediate restoration of full parental rights to Petitioner;

4. Enjoin any further enforcement of said void orders in any court;

5. Grant such other and further relief as justice requires.

Respectfully submitted,                           Dated: August 5, 2025

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Pro Se Petitioner

1914 5th Ave., Leavenworth, KS 66048

AngeliinaCourtRecords@gmail.com

(913) 972-1661

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 5th day of August, 2025, I served a true and correct copy of the foregoing Emergency Motion to Vacate Void Custody Orders for Lack of Subject Matter Jurisdiction upon the following parties by depositing same in the United States Mail, first-class postage prepaid where applicable:

Hon. Eric W. Godderz

District Judge – 4th Judicial District

Anderson County Courthouse

100 E. 4th Ave.

Garnett, KS 66032

(Respondent Judge)

BreAnne Hendricks Poe

Attorney for Jonathan Lawson

The Law Office of BreAnne H. Poe

427 S. Main Street

Ottawa, KS 66067

Email: breanne@breannepoelaw.com

(Real Party in Interest)

Respectfully submitted,

/s/ Angeliina Lynn Lawson

Pro Se Petitioner

1914 5th Ave., Leavenworth, KS 66048

AngeliinaCourtRecords@gmail.com | (913) 972-1661

Exhibit C

IN THE SUPREME COURT OF THE STATE OF KANSAS

Appellate Case No. 129285

ANGELIINA LYNN LAWSON,
Petitioner,

v.

HON. ERIC W. GODDERZ,
Respondent.

Writ of Prohibition

NOTICE OF JUDICIAL INACTION AND CONTINUING IRREPARABLE HARM

COMES NOW the Petitioner, Angeliina Lynn Lawson, appearing pro se, and respectfully gives notice to this Honorable Court of the following:

1. On August 5, 2025, Petitioner filed an Emergency Supplemental Motion to Vacate Void Custody Orders for Lack of Subject Matter Jurisdiction within the above-captioned writ proceeding.

2. Said motion demonstrated that Judge Eric W. Godderz:
   - Exercised jurisdiction in Anderson County contrary to K.S.A. 23-2703 and 60-609;
   - Entered ex parte custody orders without hearing or emergency;
   - Stated on the record, *"I will never allow any case to leave my county. I am too familiar with the parties, especially that mother,"* evidencing bias and refusal to transfer; and
   - Continued issuing orders after a federal removal notice in violation of 28 U.S.C. § 1446(d).

3. Despite the urgency of the matter and the minor child's ongoing separation from his mother, no ruling or acknowledgment has been entered by this Court on the emergency motion.

4. Each day of inaction allows the continued enforcement of custody orders that are void ab initio for want of jurisdiction, inflicting irreparable harm on the Petitioner and her minor son.

5. The supervised visitation provider has requested clarification because the father has refused to pay his portion of fees, exploiting procedural limbo to extend parental alienation and forcing restrictions on visits. He has blocked reunification and advancement to in-home visits by refusing to co-parent and controlling the child's access. He openly mocks the authority of the courts with $1.00 payments while owing over $32,000 in arrears, and his attorney has encouraged breaches of court orders as retaliation for Petitioner enforcing her constitutional rights.

6. This notice is submitted to preserve the record for appellate and federal review, and to respectfully request prompt adjudication or acknowledgment by this Court to prevent further harm.

7. Petitioner further reminds this Court that the Supreme Court of the United States has long recognized that the right to familial association is a fundamental liberty interest protected against government interference. Orders entered without jurisdiction or due process are void ab initio, not merely erroneous, and cannot lawfully sever the bond between parent and child.

8. Petitioner also places this Court on notice that obstruction of constitutional rights, if left uncorrected, falls within the jurisdiction of grand jury review under the Fifth Amendment.

RELIEF REQUESTED

Petitioner respectfully requests that this Honorable Court:

- Take notice of its lack of action on the pending emergency motion;
- Clarify the status of said motion; and
- Provide immediate relief by ruling on the merits or otherwise acknowledging the matter to prevent continued irreparable harm to the minor child.

Respectfully submitted,                                    Dated: September 3, 2025


/s/ Angeliina Lynn Lawson
Pro Se Petitioner
1914 5th Ave.
Leavenworth, KS 66048
AngeliinaCourtRecords@gmail.com
(913) 972-1661

CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September, 2025, a true and correct copy of the foregoing Notice of Judicial Inaction and Continuing Irreparable Harm was served by depositing the same in the United States Mail, first-class postage prepaid, properly addressed to:

Hon. Eric W. Godderz
District Judge – 4th Judicial District
Anderson County Courthouse
100 E. 4th Ave.
Garnett, KS 66032

BreAnne Hendricks Poe
Attorney for Jonathan Lawson
The Law Office of BreAnne H. Poe

427 S. Main Street
Ottawa, KS 66067


Respectfully submitted,

/s/ Angeliina Lynn Lawson
Pro Se Petitioner

Exhibit D

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,
Pro Se Respondent/Appellant,

v.                                        Civil Action No. 5:25-cv-04045 (removed)

                                          10th Circuit Appeal 25-3097

JONATHAN DAVID LAWSON
Plaintiff/Appellee.


## NOTICE OF FRAUD UPON THE COURT AND PRESERVATION OF RULE 60(b)(3) RELIEF

Respondent/Appellant, appearing pro se and under active ADA retaliation and federal investigation, submits this Notice to preserve the record and assert ongoing judicial fraud during underlying state proceedings in Anderson County District Court (Case No. 2020-DM-131), now removed and under appellate review in the Tenth Circuit (Case No. 25-3097).

### JURISDICTIONAL
Although this Court's jurisdiction is paused pending appellate review, Respondent/Appellant files this Notice to ensure that all relevant facts of procedural fraud, ADA retaliation, and civil rights suppression are preserved for judicial review and potential remand under Rule 60(b)(3).


## I. PURPOSE OF THIS NOTICE

This filing places the Court on notice that material procedural and judicial fraud was committed under color of state law during the pendency of the above-captioned matter in Anderson County. These acts form the basis for forthcoming relief under Fed. R. Civ. P. 60(b)(3) in the event of remand and/or upon reactivation of jurisdiction in this Court.

## II. FRAUDULENT CONDUCT PRESERVED FOR FEDERAL REVIEW

Respondent/Appellant hereby identifies the following non-exhaustive examples of fraud upon the court:

1. Concealment of Respondent/Appellant's Filed Affidavit: Respondent/Appellant's affidavit, fax-filed March 4, 2025, was marked "confidential" in the docket without Respondent/Appellant's request or order to seal. No justification or hearing preceded the sealing. The Clerk (Tina Miller) refused to provide a file-stamped copy and instructed Respondent/Appellant to go through her ex-counsel.

2. Fabrication of a Hearing Record: Chief Judge Taylor Wine, in a denial of ADA accommodations dated April 18, 2025, cited the existence of a hearing that never occurred to justify denial. The court record was altered to show a fictitious event.

3. Retaliatory Severance of Parental Rights: Following Respondent/Appellant's formal ethics complaint against Judge Godderz, jurisdictional objections, and ADA grievance activity, the court issued custody-altering rulings in clear retaliation. These actions were taken without notice, without a hearing, without affording Respondent/Appellant the right to speak, present evidence, confront her accuser, or cross-examine the Guardian ad Litem. The resulting order was labeled "temporary" to evade appellate review, yet has remained in effect for nearly a year—far exceeding the 60-day statutory limit for temporary orders under Kansas law.

4. Unauthorized GAL Conduct: Guardian ad Litem Andrew Bolton billed and acted in a judicial role before formal appointment, with court knowledge and cooperation.

5. Suppression of Orders and Transcripts: No order was issued on multiple motions, including for ADA relief, visitation enforcement, or transcript production. Court reporters and clerks refused to furnish records, impeding Respondent/Appellant's appeals and ADA enforcement.

6. Zoom Access Denial on May 8, 2025 at 9:00am: After federal removal was filed, the state court proceeded with an unauthorized hearing from which Respondent/Appellant was actively excluded without given zoom access link for CART services, Respondent/Appellant found an old regular link and despite multiple entry attempts was declined entry not until 9:11am without any subtitles despite CART services being run.

7. Institutional Coordination Confirmed by April 7, 2025 Litigation Hold: Over 20 court officials, including administrative, judicial, and clerk personnel, were included in a formal preservation notice acknowledging litigation risk and ADA grievance exposure — yet misconduct continued thereafter.

8. These facts are also the subject of a judicial misconduct complaint filed with the Kansas Commission on Judicial Conduct, supplemented by recent DOJ and FBI notifications.

9. The suppression of records, denial of ADA access, and concealment of orders was not incidental — it reflects a systemic containment strategy across judicial districts, coordinated through internal communications now partially recovered via KORA.

10. This Notice is also being filed as an evidentiary attachment to Respondent/Appellant's Civil RICO complaint and submitted to federal oversight authorities.

Impact on Respondent/Appellant:
As a result of these coordinated acts, Respondent/Appellant has suffered irreparable harm to parental rights, due process, and access to accommodations. The suppression of records and denial of ADA requests directly impaired Respondent/Appellant's ability to participate in proceedings, prepare federal filings, and protect her child's safety.

Respondent/Appellant respectfully requests the Court take judicial notice of the attached Rule 60(b)(3) preservation filing submitted in Lawson v. Lawson, 5:25-cv-04045, as evidence of coordinated judicial fraud, obstruction, and ADA retaliation in support of the Civil RICO enterprise pattern.

III. PRESERVATION OF FED. R. CIV. P. 60(b)(3) RELIEF

Respondent/Appellant asserts that these coordinated acts constitute fraud, misrepresentation, and misconduct warranting vacatur of all tainted rulings upon reactivation of jurisdiction. This Notice is not a motion but an evidentiary preservation filing for:

- Review by this Court and appellate tribunals,
- Attachment to federal Civil RICO filings,
- Future invocation of Rule 60(b)(3), Rule 37, and any applicable ADA enforcement orders.

Pursuant to Fed. R. Civ. P. 37(e), Respondent/Appellant asserts that court staff and parties, after being placed on formal litigation hold via written notice on April 3, 2025, failed to take reasonable steps to preserve electronically stored information (ESI) relevant to the pending litigation. This includes court clerk correspondence, access logs, metadata related to affidavit alterations, and internal scheduling communications. The continued withholding or destruction of these materials constitutes spoliation subject to sanctions or adverse inference.

These acts occurred despite the April 7, 2025 internal litigation (Exhibit A) hold issued across the Kansas judicial administration network, which included over 20 officials. This hold acknowledged the foreseeability of litigation and triggered mandatory preservation duties — duties which were disregarded.

Respectfully submitted,                                        Date: July 11, 2025

Angeliina Lawson
Pro Se Respondent/Appellant

████████████████████

CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2025, I filed the foregoing Notice with the Clerk of the Court using the CM/ECF system, and served copies on all parties by CM/ECF as appropriate.

Respectfully submitted,

Angeliina Lawson
Pro Se Respondent/Appellant

████████████████████

 Outlook

## FW: Litigation Hold - Angeliina Lawson

**From** Julie Clemens <Julie.Clemens@kscourts.gov>

**Date** Mon 4/7/2025 4:10 PM

**To** Alicia Nicodemus <Alicia.Nicodemus@kscourts.gov>; Alyssa Santiago <Alyssa.Santiago@kscourts.gov>; Amanda White <Amanda.White@kscourts.gov>; Dawn Wilkerson <Dawn.Wilkerson@kscourts.gov>; Debra Ludwig <Debra.Ludwig@kscourts.gov>; Hannah Lehman <Hannah.Lehman@kscourts.gov>; Heather Bohnsack <Heather.Bohnsack@kscourts.gov>; Kimberly Prusick <Kimberly.Prusick@kscourts.gov>; Patricia Douthitt <Patricia.Douthitt@kscourts.gov>; Patty Ponder <Patty.Ponder@kscourts.gov>; Sadelle Schmitz <Sadelle.Schmitz@kscourts.gov>; Sara Cox <Sara.Cox@kscourts.gov>

**Cc** Michelle Olberding <Michelle.Olberding@kscourts.gov>

📎 1 attachment (168 KB)

Litigation Hold 040725-2.pdf;

EXhibit A

## Julie Clemens

| | |
|---|---|
| **From:** | Julie Clemens |
| **Sent:** | Monday, April 7, 2025 4:11 PM |
| **To:** | Alicia Nicodemus; Alyssa Santiago; Amanda White; Dawn Wilkerson; Debra Ludwig; Hannah Lehman; Heather Bohnsack; Kimberly Prusick; Patricia Douthitt; Patty Ponder; Sadelle Schmitz; Sara Cox |
| **Cc:** | Michelle Olberding |
| **Subject:** | FW: Litigation Hold - Angeliina Lawson |
| **Attachments:** | Litigation Hold 040725-2.pdf |

**Importance:** High

Exhibit E – Summary of Prior Lawsuits

Petitioner: Angeliina Lynn Lawson

Mandamus Petition, Tenth Circuit Case No. ___

---

Litigation History – Jury Trials and Discovery Denied in 100% of Cases.

Each of the eleven filings had a clear legal basis (ADA retaliation, §1983 civil rights, RICO, removal for federal protection, and appeals). In every case, proceedings were cut off before the merits could be heard — through skipped IFP rulings, withheld summons, suppressed subpoenas, or dismissals. Not once has Plaintiff been permitted a jury trial, evidentiary hearing, or full discovery. This is cause for the civil RICO filing and request for out-of-district judge with 3 member panel that is also being denied.

| Case No. | Court | Year Filed | Core Claims | Outcome | Jury Trial Granted? |
|---|---|---|---|---|---|
| Judge Broomes, Mag. James 2:25-cv-02199 | D. Kan. | 2025 | ADA retaliation, civil rights, custody interference | IFP granted, summons stayed, case stalled | No |
| Judge Broomes, Mag. James 2:25-cv-02171 | D. Kan. | 2025 | ADA retaliation, denial of access, GAL misconduct | IFP granted, stayed, AG shielded from default | No |
| Judge Broomes, Mag. James 2:25-cv-02251 | D. Kan. | 2025 | Civil rights, ADA retaliation, Bolton misconduct | IFP granted, summons withheld 90+ days now | No |
| Judge Broomes, Mag. James 5:25-cv-04045 | 10th Circuit Appeal D. Kan. | 2025 | Circuit Appeal premature remand, Federal removal, ADA protections | Rapid remand within 9 days, no chance to build record, no hearings | No |
| Judge Broomes, Mag. James 6:25-cv-01179 | D. Kan. | 2025 | Civil RICO, ADA retaliation, enterprise | IFP granted, summons stayed, discovery denied | No |

| Case No. | Court | Year Filed | Core Claims | Outcome | Jury Trial Granted? |
|---|---|---|---|---|---|
| Judge John Bryant Leveanworth Dist. Ct. LV-2025-cv-000070 | Kansas Ct. Appeal | 2025 | State appeal of sanctions, ADA retaliation | Defendant defaulted but granted dismissal instead, motion disqualification, sudden sanctioned without trial or hearing | No |
| Judge John Bryant Leavenworth Dist. Ct. (two dockets) | Kansas State Court | 2025 | Custody interference, ADA retaliation, contempt | Coercive dismissal, procedural improper, skipped over IFP, no jurisdiction | No |
| Judge Rhonda Mason Johnson Dist. Ct. JO-2025-cv-623 | Kansas State Court | 2025 | Fraud, misrepresentation | 130 days inaction; no ADA retaliation, motion disqualification, sudden dismissal | No |
| Judge Keven O' Grady Johnson Dist. Ct. JO-2025-DM-1717 | Kansas Ct. Appeal | 2025 | State Appeal of no jurisdiction, ADA retaliation, no cause | Denied; change of venue, ADA accommodations, jury trial | No |
| Judge Eric Godderz Anderson County 2020-DM-131, Fraud on Court | Fed. Removed. Kansas State Court | 2020-ongoing | Fed. removal for no jurisdiction, ADA retaliation, access rights, | Dismissed, not docketed, or labeled "correspondence" | No |

Summary

- Total Lawsuits/Appeals Filed: 11
- Jury Trials Granted: 0
- Pattern: In every case, courts extinguished Plaintiff's right to a judicial forum by procedural devices (stays of service, remands, dismissals, sanctions). This systemic denial demonstrates a pattern of structural bias and validates the need for reassignment under 28 U.S.C. §§ 292(b), 294.